# EXHIBIT B

<u>**PRINCIPAL DOCUMENT**</u>

**CONTRACT Number 56045**

Between

**ESSO EXPLORATION AND PRODUCTION CHAD INC.**

And

**TAYLORS INTERNATIONAL SERVICES LTD.**

Covering

Catering and General Camp Services

### ESSO EXPLORATION AND PRODUCTION CHAD INC.

### CATERING AND GENERAL CAMP SERVICES

### PRINCIPAL DOCUMENT –C56045

### TABLE OF CONTENTS

1.    WORK. ........................................................................................ 3
2.1.  SUPPLY OF CONTRACT EQUIPMENT. ........................................... 3
2.2.  MOBILIZATION AND DEMOBILIZATION. ......................................... 3
2.3.  MAINTENANCE OF CONTRACT EQUIPMENT. ................................. 4
2.4.  MODIFICATIONS IN CONTRACT EQUIPMENT. ................................ 4
2.5.  INSPECTION OF CONTRACT EQUIPMENT AND FACILITIES. ............ 4
2.6.  WARRANTY OF CONTRACT EQUIPMENT. ...................................... 4
2.7.  TRANSPORTATION AND HANDLING OF SPARE PARTS AND CONTRACT
      EQUIPMENT. .......................................................................... 4
2.8.  ORDER. .................................................................................... 5
3.1.  NUMBER AND QUALIFICATION OF CONTRACTOR'S PERSONNEL. .... 5
3.2.  USE OF LOCAL PERSONNEL. ...................................................... 6
3.3   FIELD LABOR PRACTICES. ......................................................... 6
3.4.  INCREASE IN CONTRACTOR'S PERSONNEL. ................................. 6
3.5.  DECREASE IN CONTRACTOR'S PERSONNEL. ................................ 6
3.6.  REMOVAL OF CONTRACTOR'S PERSONNEL. ................................ 7
3.7.  TRANSPORTATION OF CONTRACTOR'S PERSONNEL. ..................... 7
3.8.  PROHIBITED ITEMS AND SUBSTANCES. ...................................... 7
3.9.  ALCOHOL AND DRUG USE. ........................................................ 7
4.1.  CONTRACTOR AS INDEPENDENT CONTRACTOR. .......................... 10
4.2   SAFETY /HEALTH/ENVIRONMENT POLICY AND PROGRAMS. .......... 10
4.3.  SAFETY AND MANNER OF CONDUCTING WORK. ........................... 10
4.4.  LEGAL REQUIREMENTS. ............................................................ 11
4.5.  ACCESS TO WORK LOCATION. ................................................... 12
4.6.  CHANGE OF LOCALE OF OPERATIONS. ....................................... 12
4.7.  ESSO'S USE OF CONTRACT EQUIPMENT IN CASE OF EMERGENCY. ... 13
4.8.  USE OF PRODUCTS ................................................................... 13
5.1.  CONTRACTOR'S INDEMNITY ....................................................... 13
5.2.  ESSO'S INDEMNITY. ................................................................... 14
5.3.  SCOPE OF INDEMNITIES. ........................................................... 15
5.4.  CONSEQUENTIAL DAMAGES ...................................................... 16
6.1.  INSURANCE. ............................................................................. 17
6.2.  REQUIRED ENDORSEMENTS. ..................................................... 17
6.3.  PROOF OF INSURANCE. ............................................................. 18
6.4.  ESSO'S RIGHT TO PROVIDE INSURANCE. .................................... 18
7.1.  TAXES IN GENERAL. .................................................................. 18
7.2.  REIMBURSABLE DUTIES AND TAXES ......................................... 20
7.3.  WITHHOLDING OF TAXES AND OTHER CHARGES. ........................ 21

Esso Exploration and Production Chad Inc.                              Catering and Gereral Camp Services
Chad Development Project                                                        Contract No. CDPF 050
Table of Contents

7.4.   SUPPLY OF INFORMATION FOR TAX PURPOSES .......................................... 21
8.1.   CONFIDENTIALITY. .......................................................................................... 22
8.2    PUBLIC STATEMENT. ....................................................................................... 22
8.3.   SAFETY, INCIDENT AND OCCUPATIONAL ILLNESS REPORTING. .............. 22
9.1.   COMPENSATION TO CONTRACTOR. .............................................................. 24
9.3.   ZERO RATE. ...................................................................................................... 24
9.5.   CHANGES. ......................................................................................................... 24
10.1. INVOICING AND PAYMENT. .............................................................................. 25
10.2. CURRENCY OF PAYMENT. ............................................................................... 25
10.3. WITHHOLDING PAYMENTS FOR VERIFICATION OF INVOICE. ...................... 25
10.4. OBLIGATIONS TO THIRD PARTY. ..................................................................... 25
10.5. AUDIT. ................................................................................................................ 26
11.    FORCE MAJEURE. ............................................................................................ 26
12.    PATENTS, COPYRIGHTS, DOCUMENTS AND INVENTIONS. ......................... 27
13.1. TERM OF AGREEMENT. .................................................................................... 28
13.2. TERMINATION FOR CONTRACTOR'S FAULT. ................................................. 28
13.3. TERMINATION FOR DELAY IN INITIATING WORK. ......................................... 29
13.4. TERMINATION FOR INSOLVENCY OF CONTRACTOR. ................................... 29
13.5. TERMINATION IN CASE OF FORCE MAJEURE. .............................................. 29
13.6. TERMINATION FOR DAMAGE OR LOSS OF CONTRACT EQUIPMENT. ......... 29
13.7. EFFECT OF TERMINATION. .............................................................................. 29
13.8. WELL PROTECTION UPON TERMINATION. ..................................................... 29
13.9. EFFECTIVE DATE OF TERMINATION. .............................................................. 30
14.1. CONTRACTOR'S REPRESENTATIVES. ............................................................ 30
14.2. ESSO'S REPRESENTATIVES. ........................................................................... 30
15.1. ADDRESSES FOR COMMUNICATIONS AND PAYMENTS. .............................. 30
15.2. ORAL NOTICES. ................................................................................................ 31
16.1. CONFLICT OF INTEREST. ................................................................................ 32
16.2. BUSINESS PRACTICES. .................................................................................... 32
16.3 INFORMATION BROKERING. ............................................................................ 32
17.    SUBCONTRACTING AND ASSIGNMENT. ........................................................ 33
18.1. ARBITRATION. ................................................................................................... 33
18.2. APPLICABLE LAW. ............................................................................................ 33
18.3. FOREIGN CORRUPT PRACTICES ACT ........................................................... 34
19.    AFFILIATE. ........................................................................................................ 34
20.1. HEADINGS. ........................................................................................................ 35
20.2. ENTIRE AGREEMENT. ....................................................................................... 35
20.3. WAIVER. ............................................................................................................. 35
20.4. EXCLUSIVE REMEDIES. .................................................................................... 35
20.5. SEVERABILITY. .................................................................................................. 35
20.6 JOINT AND SEVERAL LIABILITY ....................................................................... 35
20.7. CONFLICT BETWEEN MAIN BODY AND EXHIBIT. .......................................... 36

## EXHIBITS AND ATTACHMENTS

EXHIBITS

| | |
|---|---|
| A | SCOPE OF WORK |
| B | TAX BASIS |
| C | RATES, PRICES AND STAFFING |
| D | WORKPLACE HARASSMENT |
| E | S. H. E. COMPLIANCE |

ATTACHMENTS

| | |
|---|---|
| 1 | MAIN CAMP UTENSILS / LINENS |
| 2 | RIG CAMP UTENSILS / LINENS |
| 3 | DRILLING STAFF PLAN (ANTICIPATED) |
| 4 | GENERAL PROJECT SPECIFICATION FOR CATERING SERVICES GPS-002 |
| 5 | HEALTH INSPECTION GUIDELINES FOR UPSTREAM OPERATIONS |
| 6 | INVOICE PROCEDURES |

Esso Exploration and Production Chad inc.
Chad Development Project
Principal Document

Catering and Gereral Camp Services
Contract No. CDPF 050

## CATERING AND GENERAL CAMP SERVICES C-56045

On this 1st day of October, 2001, ESSO EXPLORATION AND PRODUCTION CHAD INC., a corporation organized under the laws of the State of Delaware of the United States, herein referred to as "ESSO", and TAYLORS INTERNATIONAL SERVICES LTD., a company organized under the laws of Channel Islands, herein referred to as "CONTRACTOR", in consideration of the mutual covenants and the terms and conditions herein contained, agree as follows:

1.  **WORK.**

    CONTRACTOR shall, as required by ESSO, provide to ESSO under the terms and conditions contained herein, catering and general camp services as described in Exhibit A-Scope of Work, attached hereto and made a part hereof, in connection with the drilling activities identified in Exhibit A-Scope of Work, within the Country of Operations specified in Exhibit A-Scope of Work.

    The services to be performed hereunder, hereinafter called the "**Work**", will encompass all Goods provided and Services performed by CONTRACTOR in connection with providing catering and general camp services for drilling / completion operations, using personnel and materials hereinafter defined, and such other work within CONTRACTOR's capabilities as ESSO may reasonably request. "**Goods**" means the materials and/or equipment described in Exhibit A-Scope of Work. "**Services**" means the services described in Exhibit A-Scope of Work, including the provision of materials (including all food / beverage items), equipment, tools, or personnel required to perform such services.

2.1. **SUPPLY OF CONTRACT EQUIPMENT.**

    CONTRACTOR shall furnish the equipment, machinery, tools, materials and supplies which meet, at least, the technical specifications in Exhibit A-Scope of Work, attached hereto and made a part hereof, as well as any other equipment, machinery, tools, materials and supplies which are normally required in the Work. The equipment, machinery, tools, materials and supplies to be furnished by CONTRACTOR hereunder are collectively referred to herein as the "Contract Equipment".

2.2. **MOBILIZATION AND DEMOBILIZATION.**

    (a)   CONTRACTOR shall fully mobilize the Contract Equipment and CONTRACTOR's necessary personnel, at the Mobilization Site designated in Exhibit A-Scope of Work and on the date specified in Exhibit A-Scope of Work.

    (b)   Upon completion of the Work, CONTRACTOR shall demobilize CONTRACTOR's personnel and the Contract Equipment, either at the

Demobilization Site specified in Exhibit A-Scope of Work, or at another location acceptable to ESSO and CONTRACTOR.

### 2.3. MAINTENANCE OF CONTRACT EQUIPMENT AND MATERIALS

CONTRACTOR shall ensure that the Contract Equipment are adequately maintained and shall be responsible for all maintenance, repairs and spare parts. CONTRACTOR shall provide, store and maintain, at its cost, a readily available stock of maintenance and repair parts and operating supplies sufficient for the normal continuous operation of the Contract Equipment and Materials during the Specified Term (as defined in Subsection 13.1).

### 2.4. MODIFICATIONS IN CONTRACT EQUIPMENT AND MATERIALS.

Unless CONTRACTOR has a justifiable reason for not agreeing to ESSO's request, but without prejudice to ESSO's right to require CONTRACTOR to remedy deficiencies in the Contract Equipment and Materials under Subsection 2.5, below, CONTRACTOR shall make additions to, deletions from or substitutions in the Contract Equipment and Materials as ESSO may request.

### 2.5. INSPECTION OF CONTRACT EQUIPMENT, MATERIALS AND FACILITIES.

ESSO may inspect, at any time and from time to time during the Specified Term, the Contract Equipment and Materials and inspect any and all work performed hereunder and may inspect any part of CONTRACTOR's premises and equipment, including but not limited to offices, accommodations, galleys, workshops, storage facilities and any other locations which are in any way associated with the execution of the Work. CONTRACTOR shall promptly remedy to ESSO's satisfaction, but at no cost to ESSO, any deficiency objected to by ESSO for properly substantiated cause.

### 2.6. WARRANTY OF CONTRACT EQUIPMENT AND MATERIALS.

CONTRACTOR warrants that the Contract Equipment and Materials are properly selected for the Work, that any equipment warranty given hereunder will be serviced according to the terms of said warranty, that it is fully capable of carrying out such work, that it will perform the Work in accordance with generally accepted oil-field practices and that it fulfills in every respect the requirements and specifications set out in Exhibit A-Scope of Work.

### 2.7. TRANSPORTATION AND HANDLING OF SPARE PARTS AND CONTRACT EQUIPMENT.

CONTRACTOR shall, at its sole cost and expense, transport all other spare or repair parts or other Contract Equipment needed for the Work to the Main Camp or Remote Camp by the most expeditious manner needed under the circumstances. In the event that the Work is suspended or substantially impaired due to the lack of spare or repair parts at the well site, CONTRACTOR shall use air transportation.

## 2.8.  ORDER

### 2.8.1 Issuance by Esso.

"Order" means the document issued by Esso referencing this Agreement specifying the Goods to be supplied and/or Services to be performed for Esso, using any form Esso may provide, whether labeled as an Order or by other labels, including, but not limited to, "call-off", "release", "work release", "work order", "work authorization", "letter of authorization", or "request for services". Orders will be in written form and will be delivered by mail, courier, facsimile, or other electronic transmission; however, Orders may be issued orally in which case they will be confirmed in writing by Esso, unless otherwise agreed.

### 2.8.2 CONTRACTOR's Receipt of Order.

Unless otherwise agreed, CONTRACTOR's receipt of each Order shall be confirmed by CONTRACTOR in written form and delivered by mail, courier, facsimile or other electronic transmission.  However, if CONTRACTOR begins to perform the Work designated in an Order that CONTRACTOR has not confirmed in writing, or in an oral Order, CONTRACTOR's commencement of performance of the Work shall be confirmation of receipt of the Order as of the date of such commencement of performance.

### 2.8.3 Changes to Orders.

Any alteration, deletion or addition to the Work ordered in any Order or a change in any provision of an Order shall be effective only if made in a Change Order executed by Esso.  Orders are deemed to include any applicable Change Orders.

## 3.1.  NUMBER AND QUALIFICATION OF CONTRACTOR'S PERSONNEL.

CONTRACTOR shall furnish, under its exclusive responsibility, sufficient competent and experienced supervisory, technical and other personnel to perform properly the Work, including, but not limited to, the numbers, classifications and work schedules of personnel as stated in Exhibit A and the Proposal Form, attached hereto and made a part hereof.  CONTRACTOR represents and warrants that the personnel so listed will be sufficient to perform fully the Work as presently anticipated.  Without in any way relieving CONTRACTOR of its obligation to furnish capable personnel, CONTRACTOR shall present to ESSO for its review a resume for individual supervisory personnel prior to assigning them to performance of any work hereunder, and shall not assign to such work anyone who for any reason is unacceptable to ESSO.  CONTRACTOR shall also review with ESSO its plans for transferring any supervisors or skilled workmen from performance of work hereunder to work elsewhere, and shall endeavor to agree to any reasonable request which ESSO may make that CONTRACTOR refrain from making such a transfer.

## 3.2.  USE OF LOCAL PERSONNEL.

CONTRACTOR shall not engage in any discrimination of whatever nature, whether on the basis of race, sex, religion or nationality.  CONTRACTOR shall give priority to the use of Chadian personnel, equipment, materials and services available in Chad as well as the services of contractors and insurers established in the Republic of Chad, provided however such personnel, equipment, materials and services meet the criteria of efficiency, technical capabilities and financial considerations and are comparable to personnel, equipment, materials, and services of foreign origin with regard to quality, price, reliability, delivery terms and availability at the time and in the quantities required.  CONTRACTOR shall present for ESSO's approval its implementation plans and objectives for utilizing Chadian personnel, equipment, materials, and services, and shall keep ESSO advised as to the status of reaching such objectives.  CONTRACTOR shall cause its subcontractors to comply with these requirements.

## 3.3  FIELD LABOR PRACTICES.

Field employees of CONTRACTOR and its subcontractors engaged in the performance of Work at the Work locations shall be governed by the following provisions:

> Regular working schedules for employees covering the basic work week and scheduled overtime shall be submitted to ESSO for its approval.  No employee shall work unscheduled overtime except with ESSO's prior approval, except where an emergency precludes CONTRACTOR's obtaining prior approval.  Overtime is time for which employees receive premium pay in addition to straight time pay or time worked and paid for in addition to basic work week time.

## 3.4.  INCREASE IN CONTRACTOR'S PERSONNEL.

CONTRACTOR shall not increase the manning level above that shown in the Proposal Form for ESSO's account without prior written approval of ESSO.  Upon obtaining ESSO's prior written approval for each additional employee so increased, CONTRACTOR will be compensated for such employee at a mutually agreeable rate for the position to be occupied by such employee.

## 3.5.  DECREASE IN CONTRACTOR'S PERSONNEL.

The number and classification of personnel to be furnished by CONTRACTOR under the terms hereof may be decreased during periods of partial or complete shutdown of operations hereunder if requested by ESSO unless CONTRACTOR has a justifiable reason for not doing so, and unit rates shall be adjusted accordingly.  Any rate reduction resulting from a decrease in personnel is applicable to all rates.  CONTRACTOR has no right to utilize less than said number of personnel listed in the Proposal Form without ESSO's prior written consent.

### 3.6.  REMOVAL OF CONTRACTOR'S PERSONNEL.

In the performance of the Work, CONTRACTOR shall maintain strict discipline and good order among its employees and the employees of its contractors and subcontractors, and may not permit any of them to engage in activities which ESSO deems contrary or detrimental to ESSO's interests.  If ESSO should request that any employee of CONTRACTOR or of a contractor or subcontractor of CONTRACTOR be removed from the Work because his continued relationship thereto could be detrimental to the performance thereof or is a source of concern to ESSO, CONTRACTOR shall agree to such request and shall provide a replacement acceptable to ESSO at no additional cost to ESSO.

### 3.7.  TRANSPORTATION OF CONTRACTOR'S PERSONNEL.

CONTRACTOR shall provide, at its own expense, transportation for:

(a)     its expatriate personnel between their points of origin and the City of N'Djamena, Chad.

(b)     its personnel (other than expatriate personnel) between their points of hiring and the Kome Base Camp.

ESSO will provide transportation for CONTRACTOR'S expatriate personnel between the City of N'Djamena and the Kome Base Camp.

### 3.8.  PROHIBITED ITEMS AND SUBSTANCES.

Firearms, hunting/fishing equipment, "bushmeat", weapons, explosives, drugs, drug paraphernalia, intoxicating beverages (alcohol) are not allowed on ESSO property, work sites, ESSO furnished transportation or other premises without proper authorization from ESSO.  Entry into or onto such property, work sites or transportation units is subject to the consent and recognition of the right of ESSO and its authorized representatives to conduct searches of the person and property of individuals when entering on or departing said sites.

### 3.9.  ALCOHOL AND DRUG USE.

(a)     CONTRACTOR, its employees, agents and subcontractors shall not perform any service for ESSO while under the influence of alcohol or any controlled substance.  CONTRACTOR, its employees, agents and subcontractors shall not use, possess, distribute or sell alcoholic beverages, illicit or non-prescribed controlled drugs, or drug paraphernalia, or misuse legitimate prescription drugs, while on or in the vicinity of ESSO property or other areas where work or services for ESSO are conducted pursuant to this Agreement.

(b)     CONTRACTOR warrants that it has adopted its own written policy on Prohibited Items, Drugs, Other Controlled Substances and Alcohol Abuse

("Policy") to assure a drug and alcohol free work place while performing services under this Agreement, and which contains standards to ensure that CONTRACTOR, its employees, agents and subcontractors shall not perform any work or service for ESSO while under the influence of alcohol or any controlled substance and which forbids the possession, distribution, purchase, sale or consumption of drugs, narcotics or alcohol on or in the vicinity of ESSO property or other areas where work or services for ESSO are conducted pursuant to this Agreement.

(c)   CONTRACTOR will remove any of its employees, agents, or subcontractors from performing work for ESSO any time there is suspicion of alcohol/drug use, possession, or any time an incident occurs where drug or alcohol use could have been a contributing factor.  ESSO has the right to require CONTRACTOR to remove employees from performing work for ESSO any time cause exists to suspect alcohol or drug use.  In such cases, CONTRACTOR's employee may only be considered for return to work after CONTRACTOR certifies as a result of an alcohol and drug for-cause test, conducted immediately following removal, that said employee was in compliance with this Agreement.  CONTRACTOR will not use an employee, agent or subcontractor to perform services for ESSO who either refuses to take, or tests positive in, any alcohol or drug test or who refuses to participate in medical evaluation.

In addition, for-cause alcohol and drug tests are required after any safety incident where there exists a basis to suspect involvement of alcohol or drug use, after any lost time accident, restricted work incident or medical treatment, or after any safety incident involving CONTRACTOR supervisory personnel.

(d)   ESSO reserves the right, without prior notice, to search the person, possessions, vehicles and other property of CONTRACTOR, its employees, agents, and subcontractors that are on premises owned or controlled by ESSO.  Any person who refuses to cooperate with such search will be removed from the premises and not allowed to return.  CONTRACTOR will replace any of its employees, agents, or subcontractors at ESSO's request.

(e)   ESSO shall have the right, but not the obligation, to perform unannounced audits of CONTRACTOR's alcohol and drug program to verify that CONTRACTOR's Policy and its enforcement are acceptable to ESSO management.

(f)   Regarding CONTRACTOR employees performing work for ESSO, CONTRACTOR will enforce its Policy with appropriate drug and alcohol testing programs.  CONTRACTOR's testing policy will specify substances, testing frequency, and threshold levels.  CONTRACTOR will select a lab

Esso Exploration and Production Chad inc.
Chad Development Project
Principal Document

Catering and Gereral Camp Services
Contract No. CDPF 050

certified to conduct such testing under a state or nationally recognized certification program or that is otherwise acceptable to ESSO. CONTRACTOR certifies that all its safety sensitive personnel performing services under this Agreement have passed a pre-access alcohol and drug test within the time frame prescribed under sub-paragraph (i) of this Section 3.9.  Any type of alcohol and drug test conducted during this period as part of CONTRACTOR's substance abuse program that meets the standards contained in this Agreement may be used to satisfy this requirement.  In addition, for-cause alcohol and drug tests are required after any safety incident where there exists a basis to suspect involvement of alcohol or drug use, after any lost time incident, restricted work incident or medical treatment incident, or after any safety incident involving contractor supervisory personnel.  CONTRACTOR further certifies that its Policy provides the right for CONTRACTOR to conduct searches, inspections, and tests, without prior announcement, of the personal effects, lockers, baggage, vehicles and quarters of any person subject to the Policy.  Said searches or tests may include the taking of blood and/or urine samples for testing to determine the presence of drugs, narcotics or alcohol.

(g)  ESSO shall have the right to require CONTRACTOR to conduct unannounced periodic or random testing of CONTRACTOR's employees in jobs that are determined by ESSO to be comparable to a ESSO safety-sensitive or designated position, including but not limited to the following:

- Catering Manager
- General Services Manager
- Camp Manager
- Head Chefs

(h)  CONTRACTOR certifies in addition that such employees are continuously subject to such periodic or random testing under its Policy while such employees are providing services for ESSO.  Such periodic or random testing may include alcohol screening tests utilizing saliva sticks or breathalyzer and the taking of urine samples for testing to determine the presence of drugs, narcotics or alcohol.

(i)  Prior to mobilization to Chad by CONTRACTOR or subcontractor expatriate employees or agents, CONTRACTOR shall, in an appropriate manner, test such employees for alcohol and/or drug abuse.  Prior to assigning any individual, including individuals other than expatriate employees, to a safety sensitive or designated position listed elsewhere in this paragraph 3.9, or prior to allowing any individual to perform in a safety sensitive or designated position, CONTRACTOR shall, in an appropriate manner, test such individual for alcohol and/or drug abuse.

Esso Exploration and Production Chad Inc.       Catering and General Camp Services
Chad Development Project             Contract No. CDPF 050
Principal Document

(j) In the event CONTRACTOR is unable to comply with these obligations, ESSO shall have the option to cancel this Agreement upon written notice to CONTRACTOR.  CONTRACTOR shall be entitled to payment for work or services performed to the date of such cancellation under the attached fee schedule, but no payment shall be made for lost profit, unused materials or bonus, if applicable.

## 4.1.  CONTRACTOR AS INDEPENDENT CONTRACTOR.

All of CONTRACTOR's operations hereunder are those of an independent CONTRACTOR and neither it, its employees, agents, Contractors, nor subcontractors may be considered employees or agents of ESSO.  As an independent contractor, CONTRACTOR assumes all legal and contractual obligations arising out of the performance of the Work, except as otherwise provided herein.

## 4.2  SAFETY / HEALTH / ENVIRONMENT POLICY AND PROGRAMS.

CONTRACTOR shall place the highest priority on safety, health and the environment (SHE) while performing work for ESSO.  CONTRACTOR shall take all measures necessary or proper to provide and maintain a safe working environment for its employees, the public and third parties, and to perform its work or services in an environmentally sound manner.  Such measures shall include, at a minimum:

a) Compliance with all applicable laws and regulations for the promotion or protection of safety, health and the environment, (CONTRACTOR shall immediately advise ESSO if any breach or suspected breach of any applicable law or regulation occurs);

b) CONTRACTOR warrants that it has adopted written policies on safety, health and environmental responsibility.  Such policies shall include documented practices and/or procedures designed to ensure compliance with such policies, and shall require, as appropriate, personnel to attend SHE and cross-cultural awareness meetings and training.  ESSO and CONTRACTOR shall use their best efforts to ensure that their respective employees are familiar with and observe all SHE regulations and programs they have established.

## 4.3.  SAFETY AND MANNER OF CONDUCTING WORK.

CONTRACTOR shall:

(a) perform the Work in a diligent, skillful and workmanlike manner and in strict compliance with the terms of this Agreement;

(b)     exercise the utmost care to prevent, in the course of performing the Work, pollution as a result of discharging or allowing to escape from the Drilling Unit or any other Contract Equipment any trash, waste oil or other pollutant;

(c)     take all measures necessary or proper to provide safe working conditions and comply with ESSO's safety regulations and with applicable regulations of the Country of Operations;

(d)     not permit smoking or any open flames at or in the immediate vicinity of a well when such practices are hazardous;

(e)     define hazardous areas at the well site and the vicinity thereof and mark with appropriate signs the no smoking areas and areas approved for smoking;

(f)     establish a permit to work system and follow proper procedures for conducting work on designated critical systems and hot work such as that involving welding or cutting, and ensure that engine exhausts are equipped with suitable spark arresters so as to reduce the hazard of fire being ignited by exhaust;

(g)     establish a hazardous chemical control system (including proper storage practices for hazardous/toxic materials), maintain a centralized Material Safety Data Sheet ("MSDS") record and display MSDS sheets at worksites where hazardous chemicals are stored or used.  Ensure adequate employee training is conducted and systems are in place to effectively communicate MSDS data;

(h)     comply with Exhibit A – Scope of Work attached hereto and at a minimum, supply personal protective safety equipment to its employees and when appropriate, shall ensure its employees use hard hats, safety glasses, safety shoes with steel toe caps, and work gloves.  Additional personnel protection safety equipment may be required by some employees based on the hazards associated with their jobs.

## 4.4.  LEGAL REQUIREMENTS.

CONTRACTOR shall:

(a)     be subject to the applicable law of the Country of Operations and shall, except as otherwise specified in Subsection 4.5, below, apply for and obtain all necessary certifications, permits, licenses and authorizations needed for the personnel, equipment and technology and required inside or outside the Country of Operations, including any authorizations or licenses required

under the applicable provisions of the export administration regulations of the Department of Commerce of the United States of America or those of any other governmental body for use of CONTRACTOR's Equipment, personnel or technology in the Work or the export of such equipment and technology to the Country of Operations;

(b)    as may be required by applicable law, establish and register an office in the Country of Operations and qualify as an organization operating and doing business therein, register and file such notices and/or tax returns with the tax authorities of the Country of Operations;

(c)    without prejudice to the generality of the foregoing, obtain, on or before the commencement of the Specified Term, all certifications and permits required by any appropriate bodies of the Country of Operations for use of the Contract Equipment and CONTRACTOR's personnel in the Work in all areas within the Country of Operations and thereafter maintain the same in effect throughout the Specified Term; and

(d)    cooperate with ESSO to establish procedures, including the appointment of a tax representative, as may be required, in order to comply with the applicable tax law and regulations.

## 4.5.  ACCESS TO WORK LOCATION.

ESSO, at its expense, shall obtain necessary authorizations or permits, including government licenses and permits, for personnel of ESSO and CONTRACTOR to enter into and exit from each work location of ESSO in connection with the performance of the Work.  ESSO shall promptly advise CONTRACTOR and CONTRACTOR shall observe any restrictions, conditions or limitations in ESSO's rights or permits affecting the right of entry to the location or the operations of ESSO, but CONTRACTOR shall not be liable for failure to comply with terms of any agreement or permit of ESSO as to which CONTRACTOR is not aware and could not reasonably be expected to have known about.

## 4.6.  CHANGE OF LOCALE OF OPERATIONS.

ESSO shall have the right to change at any time and from time to time the area of operations within the Country of Operations and CONTRACTOR's previously designated Specified Base either designated in Exhibit A-Scope of Work or in accordance with this Subsection.  Any location so designated by ESSO will be "Contractor's Specified Base" in substitution for the preceding Contractor's Specified Base.  In case of such change of locale of operations, ESSO shall provide or cause CONTRACTOR to provide for ESSO's account, transportation for the Contract Equipment and CONTRACTOR's personnel to such newly designated locale.

### 4.7. ESSO'S USE OF CONTRACT EQUIPMENT IN CASE OF EMERGENCY.

Subject to the reasonable requirements of, and reimbursement by ESSO of any additional premium imposed by CONTRACTOR's underwriters, ESSO shall, in the event of emergency such as blowout or loss of control of any well drilled by the drilling unit, have the right to use the Contract Equipment and Materials plus CONTRACTOR's personnel for overcoming such emergency.  In the event of such use, ESSO shall pay CONTRACTOR the appropriate rates for such personnel and Contract Equipment.

### 4.8. USE OF PRODUCTS

CONTRACTOR will use the products of ESSO, its Co-Venturers, or their affiliates where such products are needed for Work performed in the Republic of Chad, provided such products are available at competitive prices, rates and contractual terms.  In cases where products are available from two or more of the noted companies (ESSO, its Co-Venturers, or their affiliates) and are equally competitive, CONTRACTOR shall endeavor to balance the use of such products so long as such balancing does not hinder the Work.

### 5.1. CONTRACTOR'S INDEMNITY.

Except as otherwise provided in this Agreement, CONTRACTOR, its contractors, subcontractors of CONTRACTOR, CONTRACTOR's affiliates or any officers, agents, employees or representatives of each (individually and collectively hereinafter sometimes referred to as "Contractor Group") shall be responsible for and shall defend, indemnify and hold harmless ESSO and its affiliates and Co-Venturers, and the officers, agents, employees and representatives of each (individually and collectively hereinafter sometimes referred to as "Esso Group") from and against any and all claims, demands, judgments and causes of action made, raised or asserted by any party for:

(a)   personal injury, including fatal injury and disease, suffered by persons other than those covered in Subsections 5.1(b) and 5.2(a), below, and loss, damage or destruction of property other than that covered in Subsections 5.1(c) and 5.2(b), below, which arise out of or in connection with the Work, to the extent such personal injury or such loss, damage or destruction of property is caused by the fault, negligence or breach of a member of Contractor Group;

(b)   personal injury, including fatal injury and disease, to any employee of Contractor Group which arises out of or in connection with the Work, regardless of whether such personal injury is caused by the fault, negligence or breach of a member of Esso Group;

(c)   loss, damage or destruction of Contract Equipment or of any property owned, borrowed or rented by Contractor Group and used in the Work, subject only to Subsection 5.2(c), below, regardless of whether such loss, damage or destruction is caused by the fault, negligence or breach of a member of Esso Group;

(d)   failure by Contractor Group to comply with the provisions of Subsection 4.4, above;

(e)   failure of a member of Contractor Group to pay any of the taxes, duties, assessments, contributions, licenses, fees and charges referred to in Subsection 7.1, below;

(f)   pollution, contamination or seepage resulting from a blowout or cratering of the well or uncontrolled well flow arising out of the Work and caused by the sole or joint  fault, negligence or breach of a member of Contractor Group provided, however, that CONTRACTOR's liability hereunder shall be limited in each such instance to the first two hundred and fifty thousand U.S. dollars (U.S. $250,000) paid out or otherwise incurred by ESSO in control of the pollutant, cleanup costs or damages to a third party;

(g)   all fines, control or cleanup costs related to any pollution, contamination or seepage above the surface caused by the discharge or leakage of any material or substance under the actual or constructive control of a member of Contractor Group from any Contract Equipment or from any equipment apparatus or machinery belonging to a member of Contractor Group or any other party providing services directly or indirectly to CONTRACTOR, to the extent caused by CONTRACTOR's or a member of Contractor Group's negligence; and

(h)   actual or alleged infringements of patented rights which directly or indirectly arise out of or are caused by or are attributed to the use of any Contract Equipment or patented rights of a member of Contractor Group or patented rights which are under any license held or alleged to be held by a member of Contractor Group.

**5.2. ESSO'S INDEMNITY.**

ESSO shall be responsible for and shall defend, indemnify and hold harmless Contractor Group from and against any and all claims, demands, judgments and causes of action made, raised or asserted by any party for:

(a)   personal injury, including fatal injury and disease, to any employee of ESSO or of any of its affiliates which arises out of or in connection with the Work,

Esso Exploration and Production Chad inc.
Chad Development Project
Principal Document

Catering and General Camp Services
Contract No. CDPF 050

regardless of whether such personal injury is caused by the fault, negligence, or breach of a member of Contractor Group;

(b)     loss, damage and destruction of ESSO Equipment regardless of whether such loss, damage or destruction is caused by the fault, negligence or breach of a member of Contractor Group;

(c)     loss, damage and destruction (excepting normal wear and tear) of the Contract Equipment used by ESSO pursuant to Subsection 4.7, above, if such loss, damage or destruction is caused by such use and if such equipment cannot be covered by CONTRACTOR's insurance;

(d)     underground damage including loss of or damage to the well (including casing and associated materials and services), damage to productive formations and loss of oil and gas from the well regardless of whether such damage or loss is caused by the fault, negligence or breach of a member of Contractor Group;

(e)     pollution, contamination or seepage resulting from a blowout or cratering of the well or uncontrolled well flow arising out of the Work to the extent CONTRACTOR is not liable therefor under Subsection 5.1(f), above;

(f)     actual or alleged infringements of patented rights which directly or indirectly arise out of or are caused by or are attributed to the use of any ESSO Equipment or patented rights of ESSO or patented rights which are under any license held by ESSO; and

### 5.3.   SCOPE OF INDEMNITIES.

(a)     Except as otherwise specifically provided herein, ESSO neither assumes nor relieves CONTRACTOR of responsibility for the consequences of CONTRACTOR's acts or omissions resulting in:

(i)      damage to or destruction or loss of use of any property:

(1)     of any party other than a member of Esso Group, including that provided under contracts concluded between ESSO and such party for provision of equipment and/or services in furtherance of ESSO's operations, or

(2)     of a member of Esso Group other than ESSO Equipment; or

(ii)     personal injury, including fatal injury and disease, to any person other than those covered under Subsection 5.2(a), above.

(b)     Except as otherwise specifically provided herein, the indemnities provided for in this Agreement shall be applicable only between Esso Group and

Contractor Group and do not create any affirmative rights in other parties, including governments.

(c) The indemnities provided for in this Agreement shall include without limitation all penalties, awards and judgments; court and arbitration costs; legal counsel's fees; and other reasonable expenses associated with such claims, demands, and causes of action.  A party hereto covered by an indemnity shall have the right at its own expense to participate in its own defense with legal counsel of its own selection.  CONTRACTOR shall notify ESSO immediately of all accidents and/or losses related to the Work and of all actual and anticipated claims related to the Work.  Each party hereto shall be primarily responsible for investigating and handling claims based on losses for which it is responsible, but the parties hereto shall cooperate with each other in investigating and handling such claims.

(d) Notwithstanding anything to the contrary in this Agreement, each party shall bear full responsibility, without limit, for its Gross Negligence or Willful Misconduct attributable to its managerial and senior supervisory personnel and, in no event, will a party be required to release or indemnify the other party for Gross Negligence or Willful Misconduct attributable to the other party's managerial or senior supervisory personnel.

"Gross Negligence" is defined by the law governing this Agreement; however, if such law does not define the term "gross negligence", it means any act or failure to act (whether sole, joint or concurrent) which is in reckless disregard of or indifference to the harmful consequences.

"Willful Misconduct" is defined by the law governing this Agreement; however, if such law does not define the term "willful misconduct", it means an intentional disregard of good and prudent standards of performance or of any of the terms of this Agreement.

## 5.4.  CONSEQUENTIAL DAMAGES

Contractor shall not be liable to a member of Esso Group for any consequential, or indirect damages, or loss of anticipated profits sustained by a member of Esso Group as a result of the Work, from any cause, including the fault, negligence or breach of a member of Contractor Group.  ESSO shall not be liable to a member of Contractor Group for any consequential, special, or indirect damages, or loss of anticipated profits, including Contract Equipment's lost time, sustained by such member of Contractor Group from any cause, including the fault, negligence or breach of a member of Esso Group.

## 6.1. INSURANCE.

CONTRACTOR shall at all times during the performance of the Work provide, pay for and maintain in full force and effect with an internationally recognized responsible insurance carrier authorized to do business in the Country of Operations and which is otherwise acceptable to ESSO, the types and amounts of insurance specified below, in a form satisfactory to ESSO. The specified amounts and types of insurance coverage shall not in any way constitute, or be construed as a limitation on CONTRACTOR's liability hereunder. CONTRACTOR shall require all of its Contractors and subcontractors to acquire and maintain as appropriate such insurance coverage as is required hereunder of CONTRACTOR, provided that such requirement would not duplicate the insurance carried by CONTRACTOR.

1.  Worker's compensation insurance or similar insurance required by any country's laws which are applicable to CONTRACTOR's employees engaged in the performance of the Agreement.

2.  Employer's liability insurance with limits as required by law of the Country of Operations by not less than U.S. $1,000,000 per occurrence covering employees engaged in the performance of the Agreement.

3.  Comprehensive general liability insurance, or the equivalent thereof, covering liabilities for bodily injury, including death, to persons and liabilities for damage to property with a combined single limit of liability of not less than U.S.$1,000,000 per occurrence for general liability covering CONTRACTOR's operations under the Agreement.

4.  Automobile liability insurance with a combined single limit of not less than U.S. $1,000,000 per occurrence for bodily injury or death, including passengers, and property damage to cover any automobiles owned, hired, or chartered directly or indirectly by CONTRACTOR for use under or in respect of the Agreement.

## 6.2. REQUIRED ENDORSEMENTS.

CONTRACTOR shall require the underwriters for all insurance carried by CONTRACTOR to name as additional insured ESSO, Exxon Mobil Corporation, their affiliates, subsidiaries, associated companies, Co-Venturers and the officers, directors and employees of all of them, and to waive their rights of subrogation against ESSO, Exxon Mobil Corporation, their affiliates, subsidiaries, associated companies, Co-Venturers and the officers, directors and employees of all of them, to the extent of the indemnity obligation contained herein. The waiver of sub-rogation shall not alter the respective liabilities of the parties hereto under Section 5, above.

Esso Exploration and Production Chad Inc.
Chad Development Project
Principal Document

Catering and General Camp Services
Contract No. CDPF 050

### 6.3.  PROOF OF INSURANCE.

CONTRACTOR shall have its insurance carrier or carriers furnish ESSO with certificates certifying that all insurance required of CONTRACTOR under this Agreement is in full force and effect stating:

(a)   the effective start and expiration dates of all policies;

(b)   that the insurance will not be canceled or materially altered during the Specified Term without thirty (30) days prior written notice by registered mail to ESSO; and

(c)   the territorial limits of all policies.

In case of loss, damage to or a taking of any of the Contract Equipment under conditions which obligate ESSO to make a payment to CONTRACTOR therefore, or in the event that a claim is asserted by a third party against any member of ESSO Group for which such indemnity is indemnified hereunder by CONTRACTOR, CONTRACTOR will fully substantiate with documentary evidence the extent of any insurance coverage as is required hereunder of CONTRACTOR. If requested by ESSO, CONTRACTOR shall require its subcontractors to furnish to ESSO the same evidence of insurance required by CONTRACTOR hereunder.

### 6.4.  ESSO'S RIGHT TO PROVIDE INSURANCE.

If CONTRACTOR neglects, fails or refuses to:

(a)   obtain and keep current the insurances specified in 6.1;

(b)   submit insurance certificates or copies of renewal certificates; or

(c)   make available for inspection by ESSO the receipts for current premiums for the insurance policies specified in 6.1; then

ESSO shall have the right to procure any such insurances at CONTRACTOR's expense and to deduct the reasonable cost thereof from any sums that may be or become due to CONTRACTOR hereunder.

### 7.1.  TAXES IN GENERAL.

Except as otherwise provided below, CONTRACTOR shall be responsible for and shall pay all taxes including income, turnover, sales, use or excise, excess profits, value added, and other taxes and import and export duties, fees and charges assessed or levied by the Country of Operations or any political subdivision thereof or by any other country against CONTRACTOR or against ESSO for or on account of any payment made to or earned by CONTRACTOR or any Contractor or

subcontractor of CONTRACTOR in connection with the Work, or for the Contract Equipment and will also take such action as is necessary to ensure payment of:

a)   all taxes assessed or levied against or on account of wages, salaries or other benefits paid to CONTRACTOR's employees or employees of its Contractors or subcontractors; and

b)   all taxes assessed or levied against or on account of the Contract Equipment.

CONTRACTOR is hereby advised and agrees to advise its employees, contractors and subcontractors rendering services hereunder that they and their respective employees shall be liable for taxes of the Country of Operations and subject to the tax laws and regulations of the Country of Operations.

If notified in writing by ESSO, CONTRACTOR will cooperate with ESSO and take all necessary actions to recover any amounts paid under Clause 7.1 which are refundable to CONTRACTOR under law enacted after this CONTRACT is signed. CONTRACTOR agrees that all refunded amounts are for ESSO's account.  If CONTRACTOR receives such refunds, such amounts will be forwarded to ESSO. By mutual agreement, any incremental costs incurred by CONTRACTOR in recovering amounts under this Article will be reimbursed to CONTRACTOR by ESSO.

CONTRACTOR and its subcontractors shall fulfill any withholding and tax retention obligations imposed by law.  Except as otherwise provided herein below, ESSO shall not be liable to CONTRACTOR, and CONTRACTOR shall have no claim against ESSO in respect of any sum which could otherwise be payable to CONTRACTOR:

a)   which ESSO has withheld from payment in accordance with any income tax or other LAW until ESSO is released from or relieved of all liability pursuant to the said law in respect of the amount so withheld and is lawfully entitled to pay the said sum to CONTRACTOR; or

b)   which ESSO has paid in accordance with the provision of any income tax, value added tax or other LAW.

Production of any receipt or notice of payment or withholding or duplicate or facsimile thereof shall be conclusive proof between ESSO and CONTRACTOR of such payment or withholding and any amount so paid or withheld by ESSO will be deemed to have been made on behalf of CONTRACTOR hereunder for the amount so paid or withheld as if the payment had been made to CONTRACTOR and will relieve ESSO of any further obligation to CONTRACTOR with respect to the amount so paid or withheld.

CONTRACTOR shall supply to ESSO, in the form and within time limits specified by a written notice from ESSO to CONTRACTOR, the information necessary to enable ESSO to comply with any lawful request for such information from any government department having responsibility for assessment or collection of the

taxes, duties, assessments, contributions, licenses, fees or other charges or any withholding and tax retention obligations.

CONTRACTOR SHALL DEFEND, INDEMNIFY AND HOLD ESSO HARMLESS FROM LIABILITY RESULTING FROM CONTRACTOR'S OR ITS VENDORS' OR SUBCONTRACTORS' FAILURE TO (I) MAKE TIMELY PAYMENT OF OR TO PAY ANY OF THE ABOVE, OR (II) COMPLY WITH THE REPORTING, FILING OR OTHER PROCEDURAL REQUIREMENTS WITH RESPECT TO THEIR PAYMENT.  INTEREST, PENALTIES OR OTHER LIABILITIES ARISING FROM SUCH FAILURES SHALL BE FOR CONTRACTOR'S ACCOUNT.

CONTRACTOR shall supply to ESSO, in the form and within time limits specified by a written notice from ESSO to CONTRACTOR, the information necessary to enable ESSO to comply with any lawful request for such information from any government department, or authorized delegate or representative thereof, having responsibility for assessment or collection of the taxes, duties, assessments, contributions, licenses, fees or other charges or any withholding and tax retention obligations referred to in this Section..

### 7.2. REIMBURSABLE DUTIES AND TAXES

ESSO shall reimburse CONTRACTOR for any gross sales, gross receipts, value added, turnover, sales, use or excise taxes which may be levied or assessed by the Country of Operations or any political subdivision thereof and are paid by CONTRACTOR on charges for services rendered to ESSO or on charges reimbursable by ESSO to CONTRACTOR and any documentary stamp taxes thereon, as well as for all import or export customs duties, consular agents' fees, port fees, import or export license fees and other similar charges paid by CONTRACTOR to the Government of the Country of Operations or any political subdivision thereof, in connection with or by reason of the entry into the Country of Operations, or the exit therefrom, of Contract Equipment imported specifically for and employed solely in the Work, and consumed in said services or exported at the conclusion thereof.  Provided, however, that in view of the fact that ESSO and its contractors and subcontractors may by law or agreement be exempted from payment thereof or entitled to a refund thereof, ESSO will not be obligated to reimburse CONTRACTOR for such taxes, duties, levies or charges unless CONTRACTOR has followed all required and appropriate procedures with respect thereto, has furnished prompt and timely written notice to ESSO of any assessment or demand for payment thereof by the Country of Operations or any political subdivision thereof prior to such payment, affords ESSO full and complete opportunity and assistance to determine whether such taxes, duties, fees, levies or charges are properly assessed or charged or whether an exemption therefrom may be applicable, permits ESSO to contest such assessment or demand for payment on CONTRACTOR's behalf and

cooperates fully with ESSO in contesting any such assessment or demand for payment prior to payment by CONTRACTOR, and takes any other action recommended to CONTRACTOR by ESSO.

### 7.3.  WITHHOLDING OF TAXES AND OTHER CHARGES

CONTRACTOR and its subcontractors shall fulfill any withholding and tax retention obligations imposed by law of the Country of Operations or any political subdivision thereof or of the government of any other country having jurisdiction.  Except as otherwise provided hereinbelow, ESSO shall not be liable to CONTRACTOR, and CONTRACTOR shall have no claim against ESSO in respect of any sum which would otherwise be payable to CONTRACTOR:

(a)    which ESSO has withheld from payment in accordance with any income tax or other law of the Country of Operations or any political subdivision thereof or of the government of any other country having jurisdiction until ESSO is released from or relieved of all liability pursuant to the said law in respect of the amount so withheld and is lawfully entitled to pay the said sum to CONTRACTOR; or

(b)    which ESSO has paid, in accordance with the provision of any income tax or other law of the Country of Operations or any political subdivision thereof or of the government of any other country having jurisdiction, to the person, corporation or authority legally entitled thereto.

Production of any receipt or notice of payment or withholding or duplicate or facsimile thereof shall be conclusive proof between ESSO and CONTRACTOR of such payment or withholding and any amount so paid or withheld by ESSO will be deemed to have been made on behalf of CONTRACTOR hereunder for the amount so paid or withheld as if the payment had been made to CONTRACTOR and will relieve ESSO of any further obligation to CONTRACTOR with respect to the amount so paid or withheld, except with respect to reimbursement therefor as may be required under Subsection 7.2, above.

### 7.4.  SUPPLY OF INFORMATION FOR TAX PURPOSES

CONTRACTOR shall supply to ESSO, in the form and within time limits specified by a written notice from ESSO to CONTRACTOR, the information necessary to enable ESSO to comply with any lawful request for such information from any government department having responsibility for assessment or collection of the taxes, duties, assessments, contributions, licenses, fees or other charges or any withholding and tax retention obligations referred to in this Section.

## 8.1. CONFIDENTIALITY.

CONTRACTOR may not during the Specified Term and at any time thereafter, take any advantage of any kind from possession of or exhibit or divulge to any third party any data or other information obtained in the course of providing the Work, except for such as is in the public domain or is already published, and shall exercise all due precaution to prevent the officers, employees, affiliates, contractors and subcontractors of CONTRACTOR and their respective officers and employees from doing so, such data or other information being the property of and for the exclusive use and benefit of ESSO during the Specified Term and at all times thereafter. CONTRACTOR acknowledges that its fiduciary capacity with regard to such information requires the highest degree of trust and confidence, and will ensure during and after the Specified Term that such information does not come to the knowledge of persons who are likely to be in a position to utilize it in other activities of CONTRACTOR or CONTRACTOR's affiliates or associated companies. CONTRACTOR's personnel shall not take any ESSO reports, data, information, films, or photos from the well site without specific written approval of a responsible ESSO Supervisor.

## 8.2 PUBLIC STATEMENT.

Except as may be necessary for the performance of the Work, CONTRACTOR may not disclose to third parties, without ESSO's prior written consent, the nature of such services. CONTRACTOR shall not make any reference to ESSO, Exxon Mobil Corporation, or any division or affiliate of ExxonMobil Corporation, in any publicity, advertising, including photographic representations, or other publication without ESSO's prior written consent.

## 8.3. SAFETY, INCIDENT AND OCCUPATIONAL ILLNESS REPORTING.

(a) CONTRACTOR shall report to ESSO all incidents sustained in the performance of Work for ESSO by CONTRACTOR's or its subcontractors' personnel on the day such incidents occur, and CONTRACTOR shall provide ESSO a full written report of the investigation of each such incident within five (5) days after the occurrence of the incident.

(b) CONTRACTOR shall prepare and provide to ESSO on the first work day of each month a monthly safety report which will include the following information:

   (i)   number of personnel (both field-based and support staff) assigned full time to provide the Work hereunder;

   (ii)  number of man hours worked by the personnel (both field-based and support staff) assigned full time to provide the Work; and

(iii)   the number of lost time incidents, restricted work incidents, medical treatment incidents, first aid treatments and near misses which occurred during the reporting period.

(c)   Upon completion of the work, the CONTRACTOR shall submit a summary report of its occupational illness and safety performance together with incident statistics.

For the purpose of this safety report, the following definitions shall apply:

- **Lost Time Incident (LTI):**  A work-related injury or illness resulting in an individual being unable to return to work on any scheduled worksheet following the incident (includes fatalities).

- **Restricted Work Incident (RWI):**  A work-related incident resulting in an individual being unable to perform all **normally** assigned work functions during any scheduled workshift, or being assigned to another job on a temporary or permanent basis.

- **Medical Treatment Incident (MTI):**  Any work-related loss of consciousness, injury, or illness requiring more than first aid treatment by a physician, dentist, surgeon, medic, or other registered medical personnel.

- **First aid treatment:**  Any one-time treatment and subsequent observation of minor scratches, cuts, burns, splinters, etc., which do not require medical care.  However, a physician or other registered medical person may administer the first aid.

- **Occupational Illness:**  Any illness caused, provoked or aggravated by working environment exposures, including but not limited to, hearing loss and other illnesses due to be reported to National Agencies.

- **Fatality:**  A death of an employee or contractor resulting from a work-related injury or illness.  Also, death of a non-employee/non-contractor if the causing incident originated on ESSO premises (owned, operated, controlled, or supervised by the ESSO) unless caused by suicide or terrorist activity.

- **Total Reportable Incidents (TRI):** = LTI's + RWI's + MTI's

- **Incident Frequencies:** should be expressed per 1,000,000 exposure hours.

- **Near miss (NM):**  Any act, situation or occurrence which, although it did not cause a serious injury, could have done so under other circumstances.

- **Field based man-hour calculation:** Use actual hours worked, usually 8 or 12 hour tours, for all personnel at the work site who appear on the manning roster, as per work schedule.

- **Support staff man-hour calculation:** Use actual hours worked, usually 8 hours per day, 5 to 7 days per week.

## 9.1. COMPENSATION TO CONTRACTOR.

ESSO shall pay to CONTRACTOR as full compensation for the Work, the applicable fees and rates set forth in Exhibit B – Compensation and Payment.

## 9.3. ZERO RATE.

ESSO shall not pay CONTRACTOR:

(a) any rate for an item of Contract Equipment during the time such item is not in good operating condition as required for the Work;

(b) any rate for a CONTRACTOR's employee during the time such employee is not ready and available to perform the Work; and

(c) any rate hereunder for the entire Contract Equipment and CONTRACTOR's personnel if the Work are interrupted or suspended as a result of (a) or (b), above.

## 9.5. CHANGES.

ESSO shall have the right, without additional consent from CONTRACTOR, to

(a) revise Exhibit A-Scope of Work.

(b) change elements of Work already completed or being performed in accordance with Exhibit A - Scope of Work, or

(c) omit a part of Work previously authorized.

(d) make final decisions on the interpretation of Exhibit A - Scope of Work and on matters where Job Specification permits alternatives or is not specific,

(e) provide, designate or reject sources of supply for services, equipment, materials or supplies that Exhibit A - Scope of Work requires CONTRACTOR to provide, and

If appropriate a Change Order shall be issued with respect to the matters specified in 9.5.

**10.1. INVOICING AND PAYMENT.**

Contractor shall prepare at the end of each calendar month Contractor's invoice covering payment for such month and shall submit said invoice to ESSO at ESSO's address as set forth in Subsection 15.1, below, or at such other address as ESSO may designate.  Subject to the provisions of Subsections 7.4., above, and Subsections 10.4 and 10.5, below, ESSO shall pay to Contractor within thirty (30) days after receipt of each such invoice, the amount due thereon.  All invoices and billings must be in accord with the bases and rates set forth in Exhibit C-Compensation and Payment and elsewhere herein, and must be referenced to specific sections herein or to other appropriate agreements, properly documented, utilizing the accounting classifications specified by ESSO and in accordance with the Work rendered.

**10.2. CURRENCY OF PAYMENT.**

Subject to compliance with foreign exchange regulations of the Country of Operations and except as otherwise provided in this Subsection 10.2, all payments to Contractor under this Agreement shall be made in U.S. dollars in accordance with Subsection 10.1, above.  ESSO may elect to pay Contractor as hereinafter provided, in currencies other than U.S. dollars ("other currency"), in amounts not in excess of Contractor's expenditures in such other currency, whether for items the cost of which is reimbursable hereunder to Contractor or for other expenditures incurred by Contractor for its own account in connection with the Work.

**10.3. WITHHOLDING PAYMENTS FOR VERIFICATION OF INVOICE.**

ESSO shall have the right to withhold payment on any portion of any invoice or statement presented by Contractor for reasonable verification of the correctness thereof, and irrespective of the fact that such portion relates to a payment which Contractor has already made to a third party.  ESSO shall advise Contractor of any items for which payment is being withheld, and Contractor shall submit a new and proper invoice covering those items.  It is understood that payment of any invoice or statement, with or without withholding payment on any portion thereof, shall not prejudice ESSO's right to protest or question the correctness thereof without an audit, but within the time allowed for audit pursuant to Subsection 10.6, below, and to require appropriate adjustment therein.

**10.4. OBLIGATIONS TO THIRD PARTY.**

(a)    Contractor shall be solely responsible for the payment of all labor employed by Contractor, including all social benefits, indemnities, compensations, termination payments, visas, work permits and fringe benefits of whatever nature required by contract or applicable law.  Contractor shall also be solely

responsible for the payment of all materials bills incurred by Contractor in connection with the Work.  ESSO may as a condition precedent to making any payments hereunder require from Contractor satisfactory evidence that all of Contractor's labor, materials, tax, contractual and other obligations arising out of the performance of the Work or this Agreement have been fully satisfied and discharged and that there are no liens or claims on or against ESSO, or its property by reason of CONTRACTOR's operations hereunder.

(b)    ESSO may, if it so elects, pay or discharge any proper lien or charge for CONTRACTOR's labor or CONTRACTOR's equipment under or in connection with the performance of the Work and may thereupon deduct the amount or amounts so paid by ESSO from any sums then due or which thereafter shall become due to CONTRACTOR under this Agreement.

## 10.5. AUDIT.

At any time during the Specified Term and for three (3) years from the end of the calendar year in which the Specified Term ends, ESSO and its authorized representatives shall have access to and the right to question CONTRACTOR's and CONTRACTOR's subcontractors', and agents' personnel and to examine their respective records, books, vouchers, receipts, correspondence, memoranda, data stored in computers and other records relating to or bearing upon the correctness of any invoice presented by CONTRACTOR to ESSO for payment.  ESSO shall also have the right to continue its review of such records, etc., beyond three years if a claim is in progress with such review limited to the specific areas in question. CONTRACTOR shall preserve and shall cause its subcontractors and agents to preserve all of said records during the aforementioned period, and shall, upon ESSO's written request, make them or cause its subcontractors to make the same available to ESSO in CONTRACTOR's offices in ALDERNEY, CHANNEL ISLANDS or other locations acceptable to ESSO, where additional records and documents may be available.  Such audits will be made during CONTRACTOR's normal working hours.  ESSO and its representatives shall have the right to reproduce and retain any of the aforesaid documents.  ESSO will notify CONTRACTOR of any erroneous billings made by or payments made to CONTRACTOR and discovered in an audit and each party hereto shall promptly make appropriate adjustments therein and reimburse the other for any due amounts of overpayment or underpayment, as the case may be, still outstanding as reflected by said adjustments, notwithstanding the fact that a temporary withholding or a correction of discrepancy may have been effected previously pursuant to Subsection 10.4, above.

## 11.    FORCE MAJEURE.

Except with respect to indemnities granted hereunder or payments required to be made hereunder, due fulfillment of the contractual obligations hereunder by either

Esso Exploration and Production Chad Inc.        Catering and General Camp Services
Chad Development Project                Contract No. CDPF 050
Principal Document

party hereto shall be suspended to the extent that and only so long as, despite such party's due care and diligence, performance is prevented by reason of Force Majeure. "Force Majeure" as used in this Agreement means any act of God, perils of navigation, storm, flood, earthquakes, lightening, explosion, hostilities, war (declared or undeclared), blockade, insurrection, civil commotion, acts of the public enemy, quarantine, restriction, epidemics, strikes, accident, riot, labor disturbance, any act or failure to act of a government agency or local body, acts or failure to act by the government, or any other cause beyond the reasonable control of the affected party and which could not by the exercise of reasonable diligence have been prevented or provided against, but specifically excluding financial distress. In case of suspension of work by reason of Force Majeure, the affected party shall promptly notify the other in writing and take all reasonable action required to resolve the situation.

## 12. PATENTS, COPYRIGHTS, DOCUMENTS AND INVENTIONS.

Company or Contractor, as the case may be, shall identify any patent or proprietary or protected right which it is providing for the purposes of this Agreement at the time that such patent or proprietary or protected right is so provided. Neither Company nor Contractor shall have the right of use other than for the purpose of this Agreement, whether directly or indirectly, of any patent, copyright, proprietary right or confidential know how, trademark or process provided by the other party. Contractor shall promptly notify Company if Contractor has or acquires knowledge of any patent under which a suit for the alleged infringement thereof reasonably could be brought in connection with Contractor's activities in performing the Work or in Company's activities resulting from receipt of the Work.

Contractor agrees that all tracings, drawings, field notes, requisitions, purchase orders, specifications, computer programs (data files and other software in whatever form), and other documents or records ("Documents") developed by Contractor in connection with this Agreement shall be the sole property of Company. Contractor shall provide the original and all copies of the Documents to Company when Services are completed or earlier upon Company's request. Contractor may, with the prior written approval of Company, retain one archival copy of Documents. Contractor shall keep any approved archival copy confidential and shall not use it directly or indirectly in providing any services to any other person or entity nor for any other purpose without first obtaining Company's prior written permission. Contractor hereby assigns, and shall require its employees to assign, the copyrights in all Documents to Company.

If Contractor or its personnel make any inventions, discoveries or improvements (collectively, "Inventions") patentable or unpatentable, resulting from Contractor's activities hereunder, Contractor shall promptly disclose those Inventions to

Company in writing. Inventions covered in this Section shall include those conceived during the term of this Agreement and within one (1) year thereafter. Further, Contractor hereby assigns, and shall require its employees to execute such papers as Company requests in connection with any assignment and in connection with the acquisition of letters patent, U.S. and foreign, on any Inventions. Any compensation to which a Contractor's employee may be entitled by law or otherwise for assigning Inventions shall be for Contractor's account.

Notwithstanding anything to the contrary contained herein, any and all new inventions or improvements to existing intellectual property of CONTRACTOR that relate to CONTRACTOR'S core business shall belong to CONTRACTOR. CONTRACTOR shall grant a worldwide nonexclusive, nontransferable, royalty-free license to ESSO and its Co-Venturers and their affiliates of any and all such new inventions and improvements to existing intellectual property of CONTRACTOR for the use, operation, maintenance, repair and replacement of this project.

## 13.1. TERM OF AGREEMENT.

Unless terminated earlier pursuant to any of its provisions, this Agreement shall be effective as of the date hereof and shall continue thereafter in force for a primary term three (3) years. Additionally, ESSO has the right, but not the obligation, to consider additional Work beyond the primary term based on mutually agreeable terms between ESSO and CONTRACTOR.

## 13.2. TERMINATION FOR CONTRACTOR'S FAULT.

ESSO may terminate this Agreement if:

(a)  due to its design, construction or operation, the Contract Equipment fails to be as warranted in Subsection 2.6, above, or CONTRACTOR fails or refuses to remedy deficiencies in the Contract Equipment objected to by ESSO under Subsection 2.5, above;

(b)  CONTRACTOR is conducting the Work in such a way as to endanger the safety of the personnel of CONTRACTOR, ESSO or ESSO's contractors, or their respective plant, equipment or materials;

(c)  substantial pollution results from CONTRACTOR's failure to fulfill its obligation related to prevention of pollution;

(d)  CONTRACTOR acts inconsistent with the provisions of Subsection 16.1 or 16.2, below; or

(e)  CONTRACTOR commits any material breach of this Agreement;

provided that, prior to such termination under this Subsection 13.2, excluding Subsections 13.2(b) and 13.2(c), above, ESSO requests CONTRACTOR in writing to remedy the matter complained of within a reasonable period of time not to exceed ten (10) days and CONTRACTOR fails or refuses to provide such remedy to ESSO's satisfaction.

### 13.3. TERMINATION FOR DELAY IN INITIATING WORK.

ESSO may terminate this Agreement if the Contract Equipment is not delivered at the Mobilization Site within five (5) days after the date specified for this purpose in Exhibit A-Scope of Work, regardless of the cause of such delay.

### 13.4. TERMINATION FOR INSOLVENCY OF CONTRACTOR.

In the event that CONTRACTOR becomes insolvent or makes an assignment for the benefit of creditors or files a voluntary petition of bankruptcy, or in the event that involuntary bankruptcy proceedings or receivership proceedings should be instituted against CONTRACTOR, ESSO may terminate this Agreement.

### 13.5. TERMINATION IN CASE OF FORCE MAJEURE.

In the event of any occurrence of Force Majeure which is not covered by Subsection 13.6, below, ESSO may terminate this Agreement upon ten (10) days written notice to CONTRACTOR.

### 13.6. TERMINATION FOR DAMAGE OR LOSS OF CONTRACT EQUIPMENT.

If the Contract Equipment or an essential part thereof is damaged or lost for any reason and CONTRACTOR is not able or willing to repair or replace the same within a reasonable period of time acceptable to ESSO, ESSO may terminate this Agreement.

### 13.7. EFFECT OF TERMINATION.

Neither party shall be liable to the other nor have any claim against such party for loss of income, anticipated profit or damages for, or on account of, or arising from any termination of this Agreement pursuant to Subsection 13.4 or 13.5, above. However, termination by ESSO under Subsection 13.2, 13.3, or 13.6, above, may not be the only remedy available to ESSO.

### 13.8. WELL PROTECTION UPON TERMINATION.

In case of termination of this Agreement pursuant to Subsection 13.2 or 13.4, above, CONTRACTOR shall, at ESSO's expense, take such action to provide catering and general camp services, as ESSO may direct.

**13.9.** **EFFECTIVE DATE OF TERMINATION.**

Termination of this Agreement under this Section 13 will be effective on completion of the drilling program requested by ESSO, return of CONTRACTOR's personnel to CONTRACTOR's Specified Base and return of Contract Equipment to the Demobilization Site, or, if the personnel or Contract Equipment is not so returned, this Agreement shall be deemed to have terminated at the time notified by ESSO to CONTRACTOR as the time taken to return such equipment and personnel as aforesaid.

**14.1.** **CONTRACTOR'S REPRESENTATIVES.**

CONTRACTOR shall designate in writing to ESSO the person or persons who will have supervisory authority over the Work and with whom ESSO's representatives may coordinate the performance of the Work. CONTRACTOR's representative will be in direct charge of the Work and is empowered to act for CONTRACTOR in all matters relating to CONTRACTOR's performance of Work and obligations hereunder. Notices concerning operations which are transmitted to CONTRACTOR through its designated representatives shall be deemed to have been sufficiently given for purposes of this Agreement.

**14.2.** **ESSO'S REPRESENTATIVES.**

ESSO shall designate in writing one or more representatives in the area of operations to whom CONTRACTOR's representatives may deliver reports and other confidential information developed from the Work. ESSO's representatives will consult with CONTRACTOR's representatives in the planning and coordination of the work, and are empowered to act for ESSO in all matters relating to CONTRACTOR's performance of the Work, and to determine whether or not CONTRACTOR is performing the Contact Services in accordance with the provisions of this Agreement.

**15.1.** **ADDRESSES FOR COMMUNICATIONS AND PAYMENTS.**

Without prejudice to the provisions of Subsections 14.1 and 14.2, above, and Subsection 15.2, below, all notices, invoices and other communications hereunder shall be deemed to have been properly given or presented, and all payments properly made, if delivered in person or mailed or sent by telex, cable or telegraph, charges prepaid, by one party to the other at the other's address indicated in Exhibit A or such substitute address as it may theretofore have indicated.

**ESSO NOTICES:**                                        **ESSO INVOICES:**
ESSO EXPLORATION AND                      ESSO EXPLORATION AND
    PRODUCTION CHAD INC.                          PRODUCTION CHAD, INC.
16945 Northchase Drive, 8th Floor          14950 Heathrow Forest Parkway

Esso Exploration and Production Chad Inc.
Chad Development Project
Principal Document

Catering and Gereral Camp Services
Contract No. CDPF 050

Houston, TX  77060
Attn: Dan L. Breeding
        Engineering Manager
Fax:  281-885-2757

Houston, Texas, USA  77032
Attn: Ron Gregory
  Fax: 281-885-2327

**COPY OF NOTICES ONLY:**

ESSO EXPLORATION AND
PRODUCTION CHAD INC.
16945 Northchase Drive, 8th Floor
Houston, TX  77060
Attn: 1) Mark Clawson / Ron Parish
          - Operations Superintendent
      2) Garry Marshall – Drilling Camp Boss
Fax:  44-20-707-42603

EXXONMOBIL GLOBAL SERVICES
COMPANY (Drilling Procurement)
16945 Northchase Drive, 9th Floor
Houston, Texas, USA  77060
Attn:  Lee B. Garza –
        Sourcing Specialist

  Fax: 281-654-1465

**CONTRACTOR:**

**NOTICES:**

TAYLORS INTERNATIONAL SERVICES LTD.
5/7 St. Anne's House
P.O. Box 37, Victoria Street
Alderney, Channel Islands
Tel: 44-1481-82-2934
Fax: 44-1481-82-3226

**COPY OF NOTICES ONLY:**

Taylors International – Texas Office
P.O. Box 6825
Kingwood,  Texas  77325
Attn: Mr. Glen Beal
Tel: 281-358-5223
Fax: 281-359-8104

**15.2. ORAL NOTICES.**

Oral notices may be given by ESSO's representative at the Drilling Unit with
respect to operational questions involved in the immediate conduct of the Work.

Esso Exploration and Production Chad Inc.
Chad Development Project
Principal Document

Catering and Gereral Camp Services
Contract No. CDPF 050

## 16.1. CONFLICT OF INTEREST.

CONTRACTOR shall exercise reasonable care and diligence to prevent any actions or conditions which could result in a conflict with ESSO's best interests. This obligation shall apply to the activities of CONTRACTOR's employees and agents in their relations with ESSO's employees and representatives and their respective families, and with vendors, subcontractors and third parties hereunder. CONTRACTOR's efforts shall include, but not be limited to, establishing precautions to prevent its employees or agents from making, receiving, providing or offering any payments, loans or other consideration, or gifts or entertainment of more than nominal value.

## 16.2. BUSINESS PRACTICES.

CONTRACTOR shall:

(a) take no action on behalf of ESSO in the performance of work or rendition of services or the conduct of operations hereunder  that would subject either party hereto to liability or penalty under any and all laws, rules, regulations, or decrees of any governmental authority;

(b) ensure that all invoices, financial settlements, reports and billings rendered by CONTRACTOR to ESSO under this contract or any amendment thereto reflect properly to the best of CONTRACTOR's knowledge and belief, the facts about all activities and transactions handled for ESSO's account hereunder, which data may be relied upon by ESSO as complete and accurate in any further recording or reporting made by ESSO for any purpose; and

(c) notify ESSO promptly upon discovery of any instance where CONTRACTOR has not complied with the requirements of Subsection 16.2(a) or 16.2(b), above.

Neither CONTRACTOR nor any subcontractor shall without the prior written consent of ESSO:  (a) use the name or any trade name or registered trademark of ESSO or of any of its affiliates in any advertising or communications to the public in any format except as necessary to perform Work; or (b) make publicity releases or announcements regarding the Agreement or the Work performed or any related activities.

## 16.3 INFORMATION BROKERING.

ESSO and CONTRACTOR are aware of a practice where consultants (termed "Illegal Information Brokers") approach Contractors and offer them confidential information or illicit influence to obtain business through corruption of the

competitive bidding process.  CONTRACTOR recognizes that the practice of Illegal Information Brokering or any other corruption of the contract award process is not permitted by ESSO, and CONTRACTOR warrants and represents that it has not utilized Illegal Information Brokering in connection with Contract and will not permit Illegal Information Brokering in connection with Work.  CONTRACTOR agrees that if an Illegal Information Broker approaches CONTRACTOR concerning any aspect of Work, CONTRACTOR will contact ESSO's representative.  ESSO undertakes that the information will be treated with the utmost confidence.

17.   **SUBCONTRACTING AND ASSIGNMENT.**

This Agreement may not be assigned by CONTRACTOR without the written consent of ESSO.  CONTRACTOR shall not subcontract all or any part of the work needed to provide the Work without ESSO's prior written approval.  Any approval given hereunder by ESSO shall not create any contractual relationship between any such subcontractor and ESSO.  CONTRACTOR shall be fully responsible for those elements of the Work performed by its subcontractors and for the acts and omissions of its subcontractors to the same extent as it is for the acts and omissions of persons directly employed by it.  ESSO may freely assign this Agreement wholly or temporarily to an affiliate of ESSO or to another assignee unless CONTRACTOR, having been advised of ESSO's intention to assign to a non-affiliate, should promptly notify ESSO in writing that CONTRACTOR would not, for justifiable reasons specified in such notice, consider entering with the proposed assignee into a contract such as this Agreement.

**18.1. ARBITRATION**

Any controversies or claims between the parties hereto arising out of or relating to this Agreement or the breach thereof may, at the election of ESSO or CONTRACTOR, be settled by arbitration in accordance with the commercial rules of the International Chamber of Commerce, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.   In determining the substance of such controversy or claim, the arbitrator(s) shall apply the laws of the State of New York of the United States of America, except for any rule of such laws which would make the law of any other jurisdiction applicable, and shall decide in accordance with the terms of this Agreement, taking into account the usage of the trade applicable to the transaction.  The arbitration shall be held in the city of New York, State of New York of the United States of America and shall be conducted in English.  Neither the existence of any controversy or claim nor the fact that arbitration is pending hereunder will relieve either party hereto of its obligations under this Agreement.

**18.2. APPLICABLE LAW.**

Esso Exploration and Production Chad inc.                                   Catering and Gereral Camp Services
Chad Development Project                                                  Contract No. CDPF 050
Principal Document

The validity, interpretation and implementation of this Agreement shall be governed by the laws of New York.

### 18.3. FOREIGN CORRUPT PRACTICES ACT

CONTRACTOR hereby represents, warrants and covenants that it will not, directly or indirectly, in connection with this Agreement and the business resulting therefrom, offer, pay, promise to pay, or authorize the giving of money or anything of value to a government official (including but not limited to employees of a government oil company), to any officer or employee of a public international organization, to any political party or official thereof or to any candidate for political office, or to any person, while knowing or being aware of a high possibility that all or a portion of such money or thing of value will be offered, given or promised directly or indirectly, to any government official, to any officer or employee of a public international organization, to any political party or official thereof, or to any candidate for political office, for the purpose of:

a)    Influencing any act or decision of such official, officer, employee, political party, party official, or candidate in his or its official capacity, including a decision to fail to perform his or its official function; or

b)    Inducing such official, office, employee, political party, or candidate to use his or its influence with the government or instrumentality thereof (including by not limited to a government oil company) or organization to affect or influence any act or decision of such government or instrumentality or organization, or to obtain an improper advantage in order to assist CONTRACTOR in obtaining or retaining business for or with, or directing business to Company or any other person in relation to this Agreement.

CONTRACTOR shall ensure that its Agreements with its subcontractors contain provisions which are in conformity with and no less stringent than this provision.

Any breach by CONTRACTOR of this provision shall be considered a material breach of this Agreement. ESSO's remedies in the event of such breach include immediate termination of this Agreement as well as other remedies provided in this Agreement or available at law.

### 19. AFFILIATE.

The word "affiliate" as used herein with relation to ESSO means ExxonMobil Corporation or any ESSO of which ExxonMobil Corporation directly or indirectly owns more than fifty percent (50%) or more of the stock having the right to vote for directors thereof.

### 20.1. HEADINGS.

The title headings identifying the respective Sections and Subsections hereof are inserted for convenient reference only and are to be disregarded in construing the rights and obligations of the parties hereunder.

### 20.2. ENTIRE AGREEMENT.

This instrument, including the attachments hereto, constitutes the entire agreement between the parties hereto with respect to the subject matter hereof and no other writing or conversation, including any terms or conditions submitted or referred to by CONTRACTOR when tendering or quoting for the Work, will be considered a part of this Agreement unless evidenced by written instrument signed by both ESSO and CONTRACTOR subsequent to the execution hereof.

### 20.3. WAIVER.

All the original rights and powers of either party hereunder shall remain in force notwithstanding any neglect, forbearance or delay in the enforcement thereof and neither party shall be deemed to have waived any of its rights or any provision of this Agreement or any notice given hereunder unless such waiver is in writing and no waiver by either party of any breach by the other party of this Agreement shall be deemed a waiver of any continuing or recurring breach.

### 20.4. EXCLUSIVE REMEDIES.

Except as otherwise specifically provided in this Agreement, no right or remedy conferred upon or reserved to either party by this Agreement or by law shall be exclusive of any other right or remedy provided herein or by law and all rights and remedies of either party conferred by this Agreement or by law shall be cumulative and in addition to every other right and remedy available to either party.

### 20.5. SEVERABILITY.

If any one provision or group of provisions in this Agreement shall be held to be invalid, void, or of no effect for any reason whatsoever, such holding shall not be deemed to affect the validity of the remaining provisions of this Agreement which can be given effect without the invalid provision, and to this end the provisions of this Agreement are declared to be severable.

### 20.6 JOINT AND SEVERAL LIABILITY

All firms of CONTRACTOR's joint venture shall be jointly and severally bound to ESSO for fulfillment of the terms of Contract and shall designate one firm to act as Managing Member with authority to bind the joint venture.

The composition or the constitution of the joint venture shall not be altered without the prior consent of ESSO.

The composition or the constitution of the joint venture shall not be altered without the prior consent of ESSO.

### 20.7. CONFLICT BETWEEN MAIN BODY AND EXHIBIT.

In the event of a conflict or ambiguity between the foregoing main body of this Agreement and any Section, Attachment or Exhibit attached hereto and made a part hereof, the main body of this Agreement shall govern.

IN WITNESS WHEREOF, the parties hereto have signed this Agreement in duplicate originals as of the date first written above.

Procurement, A Division Of ExxonMobil Global Services Company

ON BEHALF OF

**ESSO EXPLORATION AND PRODUCTION
CHAD INC.**

By  Lee B. Garza

Title  Sorcing Advisor

OCTOBER 01, 2001

**TAYLORS INTERNATIONAL SERVICES LTD.**

By  Glen M. Beal

Title  Vice-President Business Development

OCTOBER 01, 2001