# EXHIBIT G



**International Chamber of Commerce**

*The world business organization*

**International Court of Arbitration** ● **Cour internationale d'arbitrage**

# AWARD

**ICC International Court of Arbitration** ● **Cour internationale d'arbitrage de la CCI**

38, Cours Albert 1er, 75008 Paris, France
Tel. +33 1 49 53 28 28   Fax +33 1 49 53 29 33
Web site www.iccarbitration.org     E-mail arb@iccwbo.org

# ICC INTERNATIONAL COURT OF ARBITRATION

## CASE No. 13 491/JNK/EBS

TAYLORS INTERNATIONAL SERVICES LIMITED          (United Kingdom)

**vs/**

ESSO EXPLORATION AND PRODUCTION CHAD INC.          (U.S.A.)

This document is an original of the Award rendered in conformity with the Rules of the ICC International Court of Arbitration.

## BEFORE THE ICC INTERNATIONAL COURT OF ARBITRATION

-----------------------------------------------------x

TAYLORS INTERNATIONAL
SERVICES LIMITED (United Kingdom),

Claimant/Counter-Respondent,

vs.                                             Case reference 13 491/JNK/EBS

ESSO EXPLORATION AND
PRODUCTION CHAD INC. (U.S.A.),

Respondent/Counter-Claimant

-----------------------------------------------------x

## FINAL AWARD

I, the undersigned arbitrator, hereby proceed to render my Final Award herein.  All
monetary figures stated in this Award are in United States dollars.

### A.  SUMMARY OF THE FACTS AS ALLEGED

1.      Claimant Taylors International Services Limited ("Taylors") is a corporation
organized under the laws of Alderney, Channel Islands, United Kingdom.  Its principal
business address is 5/7 St. Anne's House, P.O. Box 37, Victoria Street, Alderney,
Channel Islands, United Kingdom.  It is represented in these proceedings by DMH
Stallard, 40 High Street, Crawley, West Sussex RH10 1BW, England[1].

2.      Respondent Esso Exploration and Production Chad Inc. ("Esso Chad") is a
corporation organized under the laws of the state of Delaware, United States of America.
Its principal business address is 16945 Northchase Drive, 8th floor, Houston, Texas
77060, United States of America.  Esso Chad is represented in these proceedings by
Fulbright & Jaworski L.L.P., 1301 McKinney, Suite 5100, Houston, Texas 77010, United
States of America.

3.  Taylors alleges, and claims, as follows: the parties entered into a Catering and General
Camp Services Contract on October 1, 2001 ("the Catering Contract").  The Catering
Contract provided, *inter alia*, that Taylors was to furnish catering and general camp
services in connection with petroleum drilling activities in the country of Chad.  These

---

[1] Taylors was initially represented in these proceedings by Zukerman Gore & Brandeis, LLP, 875 Third
Avenue, New York, New York 10022, United States of America.  By letter dated June 9, 2005, DMH
Stallard communicated that it was now representing Taylors instead of Zukerman Gore & Brandeis LLP.

activities constituted part of the Chad Cameroon Development Project, a major project involving the development of oilfields in southern Chad and the construction of a petroleum pipeline from Chad to the Atlantic Ocean through Cameroon. The location where Taylors' services were provided was a base camp and remote drilling camp in Kome, Chad (collectively, "the Kome Camp"). The term of the Catering Contract was three years, pursuant to Section 13.1 of the same. In Section 1 of the Catering Contract, the services to be performed by Taylors thereunder were defined as "the Work".

4. Taylors rendered services to Esso Chad pursuant to the Catering Contract. Taylors encountered certain financial difficulties in connection with its performance of the same. There were delays in payment to, or failure to pay, suppliers of goods for the purposes of the Catering Contract. Esso Chad terminated the Catering Contract on December 19, 2003. Thereafter, certain of the suppliers sued Esso Chad in Chad in respect of supplies allegedly provided in connection with the Catering Contract. These lawsuits have resulted in judgments against Esso Chad in the courts of Chad, which have been paid by Esso Chad.

5. Taylors alleges as follows: (i) that Esso Chad owes to Taylors the amount represented by certain unpaid invoices; (ii) that Esso Chad converted to its own use the food supplies and other assets that were located at the Kome Camp at the time of the termination of the Catering Contract;  and (iii) that Esso Chad breached its obligation of good faith and fair dealing under the Catering Contract by, among other matters, aiding and abetting certain alleged breaches of fiduciary duty by Taylors' employee, Vince Melvin. In addition, Taylors' allegations initially included a claim for unjust enrichment by Esso Chad, but that claim has now been abandoned by Taylors (transcript of the evidentiary hearings ("Tr."), pp. 23, 24, 50).

6. Esso Chad alleges, and counterclaims, as follows: (i) that Taylors is in breach of the Catering Contract by failing to pay certain suppliers, leading to loss and damage suffered by Esso Chad, including payment of the Chadian judgments; (ii) that Taylors is liable to indemnify Esso Chad pursuant to the indemnity provisions of the Catering Contract; and (iii) that Taylors breached its implied covenant of good faith and fair dealing by, among other matters, failing to capitalize its operation in Chad adequately, which resulted in Esso Chad being obliged to pay the Chadian judgments. Esso Chad also denies Taylors' claims.

B.  PROCEDURAL HISTORY

7. This arbitration was commenced by a Request for Arbitration submitted by Taylors to the Secretariat ("the Secretariat") of the ICC International Court of Arbitration ("the Court"), and received by the Secretariat on September 23, 2004. A copy of the Request was sent via courier to Esso Chad by the Secretariat by letter dated September 24, 2004. Esso Chad's Counterclaim and Answer was received by the Secretariat on November 30, 2004. Taylors' Reply was received by the Secretariat in January, 2005.

8. Esso Chad's Counterclaim and Answer included certain claims against Mr. H.N.A. "Sandy" Goodman and Mr. Shabbir Ali, both of whom are affiliated with Taylors. The Court, at its session held on January 14, 2005, decided not to join Mr. Goodman or Mr. Ali as parties to this arbitration.

9. The parties having agreed to submit this matter to a Sole Arbitrator, I was appointed as Sole Arbitrator by the Court at its session held on February 25, 2005, upon the proposal of the Chilean National Committee.

10. The Terms of Reference were agreed between the parties and myself. On May 11, 2005, the Terms of Reference, signed by the parties and by me, were transmitted to the Court pursuant to Article 18(2) of the 1998 Rules of Arbitration of the International Chamber of Commerce ("the Rules"). On May 11, 2005, I established the Provisional Timetable. The Terms of Reference and the Provisional Timetable were transmitted to the Court on May 27, 2005.

11. The parties engaged in documentary discovery. The parties presented fact witness statements, and Pre-Hearing Memorials. Prior to the evidentiary hearings, the parties presented a motion and cross-motion for partial summary judgment, which were denied.

12. Evidentiary hearings were held in New York, New York from November 16 to November 18, 2005, and from December 14 to December 16, 2005. During the course of the evidentiary hearings, Taylors presented an application under Article 19 of the Rules, that I should not consider certain alleged new counterclaims of Esso Chad, which application I denied. Post-Hearing Memorials were filed on January 13, 2006. Reply Memorials were filed on January 23, 2006. Thereafter, I declared the proceedings closed, on January 30, 2006, pursuant to Article 22 of the Rules. The current deadline for rendering the Final Award is May 31, 2006.

13. The parties have paid the full amount of the advance on costs, fixed by the Court at $130,000.00, in equal shares.

C.      ARBITRATION CLAUSE AND APPLICABLE LAW

14.     The arbitration clause is found in Section 18.1 of the Catering Contract, and provides as follows:

"Any controversies or claims between the parties hereto arising out of or relating to this Agreement or the breach thereof may, at the election of [Esso Chad] or [Taylors], be settled by arbitration in accordance with the commercial rules of the International Chamber of Commerce, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. In determining the substance of such controversy or claim, the arbitrator(s) shall apply the laws of the State of New York of the United States of America, except for any rule of such laws which would make the law of any other jurisdiction applicable, and shall decide in accordance with the terms of this Agreement, taking into account the usage of the trade applicable to such transaction. The

arbitration shall be held in the city of New York, State of New York of the United States of America and shall be conducted in English. Neither the existence of any controversy or claim nor the fact that arbitration is pending hereunder will relieve either party hereto of its obligations under this Agreement".

All parties to this arbitration were parties to the Catering Contract and to this arbitration clause.

15.    The applicable law is that of the State of New York, the parties having chosen this law in Sections 18.1 and 18.2 of the Catering Contract.

D.  THE PARTIES' PRAYERS FOR RELIEF

16.    The  parties' respective prayers for relief are as follows:

(i) Taylors seeks an award granting the following relief:

   (a) Awarding to Taylors the amount of certain unpaid invoices for services provided pursuant to the Catering Contract, "in an amount to be determined but believed to total $975,972.29" (Request for Arbitration, para. 55);

   (b) Awarding to Taylors damages for unlawful conversion of Taylors' food supplies and other assets, "in an amount to be determined, but believed to be approximately $700,000" (Request for Arbitration, para. 59);

   (c) Awarding to Taylors damages for breach of Esso Chad's duty of good faith and fair dealing, "in an amount to be determined but believed to be approximately $800,000" (Request for Arbitration, para. 66);

   (d) Awarding to Taylors prejudgment and postjudgment interest;

   (e) Awarding to Taylors costs and attorneys' fees;

   (f) Awarding to Taylors any and all other relief which I deem just and proper;

   (g) Denying all relief requested by Esso Chad;

(ii) Esso Chad seeks an award granting the following relief :

   (a) Denying Taylors' claims;

   (b) In the alternative, setting off Taylors' claims against the damages to be awarded to Esso Chad;

   (c) Awarding to Esso Chad damages sustained as a result of Taylors' breaches of the Catering Contract, including but not limited to attorney's fees and costs incurred

in connection with its efforts to defend claims and actions brought against Esso Chad for amounts owed by Taylors to Taylors' suppliers; such damages "may well exceed USD $ 4 million" (Counterclaim and Answer, paras. 85 and 88);

(d) Awarding to Esso Chad damages sustained as a result of Taylors' breaches of its implied covenant of good faith and fair dealing, including but not limited to attorneys' fees and costs incurred in connection with its efforts to defend claims and actions brought against Esso Chad for amounts owed by Taylors to Taylors' suppliers; such damages "may well exceed USD $ 4 million" (Counterclaim and Answer, para. 91);

(e) Awarding specific performance of the Catering Contract by Taylors, by paying all outstanding bills, invoices and payments due to all of Taylors' subcontractors and suppliers; or alternatively, that Taylors reimburse Esso Chad for any payments that Esso Chad may make to Taylors' subcontractors and suppliers pursuant to the Catering Contract (Counterclaim and Answer, para. 102(c));

(f) Awarding to Esso Chad all costs associated with this arbitration;

(g) Awarding to Esso Chad attorneys' fees, costs and expenses incurred in connection with its efforts to collect amounts owed and this arbitration;

(h) Awarding to Esso Chad pre-award and post-award interest;

(i) Awarding such other relief as I may deem appropriate.

E.  SUMMARY OF THE PROVISIONS OF THE CATERING CONTRACT

17.  The Agreement at issue in this arbitration is the Catering Contract.  Among its most significant provisions, for the purposes of this arbitration, are the following:

"5.1 [TAYLORS'] INDEMNITY

Except as otherwise provided in this Agreement, [Taylors], its contractors, subcontractors of [Taylors], [Taylors'] affiliates or any officers, agents, employees or representatives of each (individually and collectively hereinafter sometimes referred to as "Contractor Group") shall be responsible for and shall defend, indemnify and hold harmless [Esso Chad] and its affiliates and Co-Venturers, and the officers, agents, employees and representatives of each (individually and collectively hereinafter sometimes referred to as "Esso Group") from and against any and all claims, demands, judgments and causes of action made, raised or asserted by any party for:

(a) personal injury, including fatal injury and disease, suffered by persons other than those covered in Subsections 5.1(b) and 5.2(a), below, and loss, damage or destruction of property other than that covered in Subsections 5.1(c) and 5.2(b), below, which arise out of or in connection with the Work, to the extent such

5

personal injury or such loss, damage or destruction of property is caused by the fault, negligence or breach of a member of Contractor Group;

(b) personal injury, including fatal injury and disease, to any employee of Contractor Group which arises out of or in connection with the Work, regardless of whether such personal injury is caused by the fault, negligence or breach of a member of Esso Group;

(c) loss, damage or destruction of Contract Equipment or of any property owned, borrowed or rented by Contractor Group and used in the Work, subject only to Subsection 5.2(c), below, regardless of whether such loss, damage or destruction is caused by the fault, negligence or breach of a member of Esso Group;

(d) failure by Contractor Group to comply with the provisions of Subsection 4.4, above;

(e) failure of a member of Contractor Group to pay any of the taxes, duties, assessments, contributions, licenses, fees and charges referred to in Subsection 7.1, below..."

"5.4  CONSEQUENTIAL DAMAGES

[Taylors] shall not be liable to a member of the Esso Group for any consequential, or indirect damages, or loss of anticipated profits sustained by a member of the Esso Group as a result of the Work, from any cause, including the fault, negligence or breach of a member of Contractor Group..."

"7.1  TAXES IN GENERAL

Except as otherwise provided below, [Taylors] shall be responsible for and shall pay all taxes including income, turnover, sales, use or excise, excess profits, value added, and other taxes and import and export duties, fees and charges assessed or levied by the Country of Operations or any political subdivision thereof or by any other country against [Taylors] or against [Esso Chad] for or on account of any payment made to or earned by [Taylors] or any Contractor or subcontractor of [Taylors] in connection with the Work, or for the Contract Equipment..."

"10.1  INVOICING AND PAYMENT

[Taylors] shall prepare at the end of each calendar month [Taylors'] invoice covering payment for such month and shall submit said invoice to [Esso Chad] at [Esso Chad's] address as set forth in Subsection 15.1, below, or at such other address as [Esso Chad] may designate.  Subject to the provisions of Subsections 7.4, above, and Subsections 10.4 and 10.5, below, [Esso Chad] shall pay to [Taylors] within thirty (30) days after receipt of each such invoice, the amount due thereon.  All invoices and billings must be in accord with the bases and rates set forth in Exhibit C – Compensation and Payment and

elsewhere herein, and must be referenced to specific sections herein or to other appropriate agreements, properly documented, utilizing the accounting classifications specified by [Esso Chad] and in accordance with the Work rendered".

"10.4  OBLIGATIONS TO THIRD PARTY

(a) [Taylors] shall be solely responsible for the payment of all labor employed by [Taylors], including all social benefits, indemnities, compensations, termination payments, visas, work permits and fringe benefits of whatever nature required by contract or applicable law.  [Taylors] shall also be solely responsible for the payment of all materials bills incurred by [Taylors] in connection with the Work. [Esso Chad] may as a condition precedent to making any payments hereunder require from [Taylors] satisfactory evidence that all of [Taylors'] labor, materials, tax, contractual and other obligations arising out of the performance of the Work or this Agreement have been fully satisfied and discharged and that there are no liens or claims on or against [Esso Chad], or its property by reason of [Taylors'] operations hereunder.

(b) [Esso Chad] may, if it so elects, pay or discharge any proper lien or charge for [Taylors'] labor or [Taylors'] equipment under or in connection with the performance of the Work and may thereupon deduct the amount or amounts so paid by [Esso Chad] from any sums then due or which thereafter shall become due to [Taylors] under this Agreement".

"13.4  TERMINATION FOR INSOLVENCY OF [TAYLORS]

In the event that [Taylors] becomes insolvent or makes an assignment for the benefit of creditors or files a voluntary petition of bankruptcy, or in the event that involuntary bankruptcy proceedings or receivership proceedings should be instituted against [Taylors], [Esso Chad] may terminate this Agreement".

"13.7  EFFECT OF TERMINATION

Neither party shall be liable to the other nor have any claim against such party for loss of income, anticipated profit or damages for, or on account of, or arising from any termination of this Agreement pursuant to Subsection 13.4 or 13.5, above.  However, termination by [Esso Chad] under Subsection 13.2, 13.3, or 13,6, above, may not be the only remedy available to [Esso Chad]".

Exhibit A, Section 6.1:

"6.1  [Taylors] shall supply and assign to the WORK all local personnel required including but not limited to, recruitment and selection, payment, travel to and from the site, training and development, supervision, discipline and hold [Esso Chad] harmless against any litigation how so ever [*sic*] caused".

F. <u>THE ISSUES</u>

18.     The issues which I have to decide are as follows[2]:

   (i)  whether Esso Chad owes any amount to Taylors in respect of invoices issued by Taylors;

   (ii)  whether Taylors' claim for conversion succeeds;

   (iii) whether Taylors' claim for breach of the obligation of good faith and fair dealing succeeds;

   (iv) whether Esso Chad's counterclaim against Taylors in respect of failure to pay its suppliers succeeds;

   (v)  whether Esso Chad's indemnity claim succeeds;

   (vi) whether Esso Chad's claim for breach of the obligation of good faith and fair dealing succeeds;

   (vii) to the extent that any claim succeeds, the amount to be awarded to the successful party (including whether any set-off is appropriate);

   (viii) an award, to the extent appropriate, of costs, attorneys' fees and interest.

The parties agree that the standard of proof for a disputed fact or matter is the preponderance of the credible evidence: Esso Chad's Post-Hearing Memorial, p. 2; Taylors' Post-Hearing Memorial, p. 41; Taylors' Post-Hearing Reply Memorial, p. 6.

G. <u>TAYLORS' CLAIM IN RESPECT OF ITS INVOICES</u>

19.     Taylors claims from Esso Chad the amount represented by invoices issued by Taylors pursuant to the Catering Contract.  Esso Chad agrees that certain of these invoices are payable, subject to the defenses discussed in paragraphs 23-27 below.  Other invoices are not agreed by Esso Chad, and I have to decide whether they are payable, again without prejudice to Esso Chad's defenses discussed in paragraphs 23-27 below.

20.     Esso Chad accepts that invoices issued by Taylors totaling $1,369,720.07, unpaid to date by Esso Chad, are valid, always subject to paragraphs 23-27 below.  Taylors also claims that certain additional invoices, not accepted by Esso Chad as valid, are payable. These invoices are discussed individually in paragraph 21 below.

---

[2] I note that these issues are fewer than those set out in paragraph 4 of the Terms of Reference.  However, that same paragraph 4 expressly indicates that I may consider fewer issues than those set out therein.

21.     As indicated above, certain invoices submitted by Taylors remain disputed. Despite my encouragement, the parties were unable to agree upon them.  It therefore falls to me to rule upon them individually:

(i)      invoices TIS 104, and TIS-JMCC-2004 for $95,382.56: these invoices are disputed by Esso Chad on the basis that they were issued in respect of replacement catering equipment which Taylors was obliged to supply at its own cost, pursuant to Section 2.9 of Exhibit A of the Catering Contract. It appears from the invoices themselves that this is the case, and therefore I reject Taylors' claim to be paid in respect of these invoices;

(ii)     invoices TIS 016-2003 and TISM 002: these invoices are disputed by Esso Chad on the basis that they do not include any back-up documentation. I agree that no back-up documentation was included and, because of this failure to include back-up documentation, I find that Taylors has failed to prove, on a preponderance of the evidence, that these invoices are properly due. Therefore, Esso Chad's objection is properly founded, and I reject Taylors' claim in respect of these invoices;

(iii)    invoices TIS 106, TIS 025 and TIS 103A: these invoices, which are for refund of importation duties, are disputed by Esso Chad principally because a D15 Customs form was not attached or was illegible (Esso Chad's Post-Hearing Memorial, p. 26; Tr. pp. 1313-1315).  In the case of invoice 103A, which attached an illegible form, counsel for Taylors has since provided further copies of this form (letter from counsel for Taylors to counsel for Esso Chad, dated January 9, 2006).  In the case of invoices TIS 106 and TIS 025, the forms D15 are indeed missing, but the invoices attach other documentary evidence sufficient to show that the items in question were imported into Chad and delivered to the Kome Camp.  I find, on a preponderance of the evidence, in the case of all three invoices, that the importation duties were incurred by Taylors and should be refunded by Esso Chad to Taylors pursuant to the Catering Contract (Section 7.2).  No other valid objection having been raised by Esso Chad with respect to these invoices, I determine that the amount of these invoices, totaling $442,030.58, is payable by Esso Chad to Taylors;

(iv)     invoice TIS 072 is partially disputed by Esso Chad on the basis that some of charges for water supply do not have back-up documentation.  It appears that there is no such documentation for delivery of water, for the period covered by the invoice subsequent to November 20, 2003.  Therefore, on a preponderance of the evidence, I hold that Esso Chad's objection is properly founded, and I reject Taylors' claim in respect of this invoice;

(v)      invoice TISM 031 is partially disputed by Esso Chad on the basis that the work days reported by Taylors were incorrect.  No evidence was put before me which would enable me to determine whether the work days reported were in fact incorrect.  Nor is there any evidence that Esso Chad informed Taylors of the precise "items" for which payment was being withheld, pursuant to Section 10.3 of the Catering Contract: Tr. p. 1231.  Therefore, because there is no reason to disbelieve the invoice on its face, and

because Esso Chad has not provided precise evidence of its alleged incorrectness, I uphold Taylors' claim with respect to this invoice, and determine that the disputed amount of this invoice, amounting to $2,198.00, is payable by Esso Chad to Taylors;

(vi)     invoice TIS-JMCC-2004[3] for $210,800.68: Esso Chad disputes that part of the invoice that relates to the 10% surcharge or "uplift" that Taylors is entitled to charge Esso Chad in respect of camp maintenance materials: Tr. p. 1258. Mr. Gregory's evidence was that this surcharge was not payable until the materials were withdrawn from the warehouse and installed: Tr. pp. 1255, 1257-8. This evidence was not seriously challenged by Taylors. It appears from Mr. Gregory's evidence, from the terms of the invoice itself, and from Exhibit A to Taylors' Post-Hearing Memorial, that the relevant materials were in transit to the Kome Camp at the time of the termination of the Catering Contract. If so, then they cannot have been withdrawn from the warehouse, and installed, until after the Catering Contract was terminated. Therefore, the 10% "uplift" is not payable in respect of these materials, and I reject Taylors' claim in respect of this invoice;

(vii)    invoice TIS-JM-2004: this invoice is disputed in part by Esso Chad on the ground that it represents gardener's wages that Taylors did not pay. Taylors replies that the gardener's wages may have been included in the sum of $94,246.37 which Taylors authorized Esso Chad to pay on its behalf, after the termination of the Catering Contract, in respect of Taylors' pre-termination salary commitments. However, to the extent that there is any evidence either way, it indicates that this sum was not used for the purpose of paying the gardener's wages (Tr. pp. 1285, 1287). Therefore, I find that the disputed part of Taylors' invoice relates to sums that were not in fact paid by, or on behalf of, Taylors, and I reject Taylors' claim in respect of this invoice;

(viii)   invoice TIS 110: this invoice relates to vector control (insect/pest spraying) conducted both inside and outside of the Kome Camp. It is now accepted by both parties that Esso Chad is liable to meet charges for vector control outside the Kome Camp perimeter fence only (Exhibit A to Taylors' Post-Hearing Memorial). Taylors has now submitted an amended invoice, with supporting documents for vector control outside the perimeter only. This invoice was submitted by Taylors, through its counsel, on January 9, 2006, pursuant to the authority and encouragement which I gave to the parties to continue to resolve issues relating to the invoices, until the proceedings were closed (Tr. p. 1542). The amount now claimed by Taylors in respect of vector control is $9,448.72. I uphold Taylors' claim with respect to this amount, and hold that the disputed $9,448.72 is payable by Esso Chad to Taylors;

(ix)     invoices TIS 022 and TIS 053: Esso Chad's defense that these invoices were never received is spurious, since, even if they were never received previously by Esso Chad, they were clearly received by it at the time of the evidentiary hearings, and Mr. Gregory was questioned about them (Tr. pp. 1318-1322, 1324-1331). However, it appears from Taylors' own records that these invoices have in fact been paid (Ex. J3421 - 3422), and therefore I reject Taylors' claim in respect of these invoices.

---

[3] Confusingly, this bears the same numbering as the invoice referred to in sub-paragraph (i) of paragraph 21 of this Award, but is issued on a different date and is for a different amount.

22.     Of the disputed invoices, I have therefore awarded Taylors a total of $453,677.30, and rejected the balance.  Taylors' allowable claim in respect of the invoices therefore totals $1,823,397.37 ($1,369,720.07 + $453,677.30).  Always subject to paragraphs 23-27 below, this amount is due to Taylors by way of damages pursuant to Taylors' first claim in its Request for Arbitration (Request for Arbitration, paragraphs 51-55).

23.     Against Taylors' claim in respect of its invoices, Esso Chad seeks to set off, not only the amount of its counterclaim (as to which, see headings J, K and L below), but also the amount of a credit note, no. 1102003, issued against Taylors in the amount of $336,871.63.  Taylors agrees that it owes Esso Chad the amount of $210,767.26 in respect of this credit note, but disputes the balance of $126,104.37, on the basis that Esso Chad has already received credit for this amount of $126,104.37, in invoice TIS 037/2003 dated June 24, 2003 (Ex. A to Taylors' Post-Hearing Memorial).  Esso Chad argues that its credit note relates to import duties, whereas Taylors' invoice TIS 037/2003 relates to VAT (Tr. pp. 1530-1534).  Therefore, Esso Chad argues, invoice TIS 037/2003 cannot be invoked as a set-off against credit note 1102003, since they relate to different items (Esso Chad's Post-Hearing Memorial, pp. 22-25).  It would have been most helpful to have seen a copy of the credit note, and both parties appear to have accepted this (Tr. pp. 1534-1535).  Yet, despite my express order (Tr. p. 1535; and my letter to the parties dated December 19, 2005, paragraph 2), Esso Chad has not disclosed it (Taylors' Post-Hearing Reply Memorial, p. 10, fn. 26).  In my view, this would entitle me to draw an adverse inference against Esso Chad with respect to the evidence on this issue.  However, I do not need to do this; in any event I find in favor of Taylors on this issue, since the relevant Taylors' invoices (referenced at pp. 11-12 of Taylors' Post-Hearing Reply Memorial) clearly indicate that they are for VAT and not import duties.  Therefore, Esso Chad is entitled to a credit in the amount of $210,767.26 only in respect of the credit note.

24.     Against Taylors' claim in respect of its invoices, Esso Chad also seeks to set off the amount of $695,989.57, which Esso Chad paid on behalf of Taylors to suppliers, or for Taylors' December 2003 payroll: letter from counsel for Esso Chad dated January 10, 2006, point C; Esso Chad's Post-Hearing Memorial, pp. 21-22.  These payments were authorized by Taylors: Masood Statement ("St."), para. 13.  I therefore hold that Esso Chad may set off this amount against Taylors' claims in respect of its invoices.

25.     Esso Chad objects to payment of any of Taylors' invoices on the ground that Section 10.4(a) of the Catering Contract authorizes Esso Chad to withhold payment of the invoices until Taylors provides satisfactory evidence that its obligations arising out of the performance of the Work or the Catering Contract have been fully satisfied and discharged, and that there are no liens or claims on or against Esso Chad or its property by reason of Taylors' operations under the Catering Contract.  This provision must be interpreted reasonably and so as to effect the intention of the parties.  There must be a limit to the "satisfactory evidence" which Taylors may be required to present as a precondition to receiving payment of its invoices, otherwise this provision could be used by Esso Chad to delay payment of invoices almost indefinitely.  In addition, I note that

Esso Chad made payments to suppliers, out of funds due from Esso Chad to Taylors, after termination of the Catering Contract (see paragraph 24 hereof), without apparently requiring fulfillment of the precondition expressed by Section 10.4(a); and this precondition appears not to have been raised as an issue in subsequent discussions between the parties' representatives in 2004; for example, during the July 2004 meeting (Tr. pp. 1484-1486). I hold that, as of today, with payment having been made to certain suppliers by Esso Chad at Taylors' request, and further payments having been made to suppliers by Esso Chad, in effect on Taylors' behalf, pursuant to the Chadian judgments, the stage has been reached where "satisfactory evidence" has been provided by Taylors as required by Section 10.4(a), and this provision may not be used by Esso Chad as a defense to payment of amounts due to Taylors in respect of its invoices.

26.    Esso Chad also alleges that it is excused from payment of Taylors' invoices because of Taylors' material breach of the Catering Contract in failing to pay the suppliers (Esso Chad's Pre-Hearing Memorial, p. 88; Esso Chad's Post-Hearing Reply Memorial, p. 26). The authorities cited by Esso Chad make it clear that a material breach by one party excuses the other from performance in the sense that it entitles the non-breaching party to terminate the contract: *NAS Electronics, Inc. v. Transtech Electronics PTE Ltd.,* 262 F. Supp. 2d 134, 145 (S.D.N.Y. 2003), *AM Cosmetics Inc. v. Solomon,* 67 F. Supp. 2d 312, 317 (S.D.N.Y. 1999). But they are not authority for the proposition that the non-breaching party is thereby excused from fulfillment of obligations that have accrued prior to termination, as with Taylors' invoices in this case. I therefore hold that, even assuming that Taylors' breach of the Catering Contract was material, and entitled Esso Chad to terminate the Catering Contract and/or to claim damages from Taylors, that does not relieve Esso Chad from the obligation to pay Taylors' legitimate invoices in respect of services rendered pursuant to the Catering Contract.

27.    Esso Chad also alleges that it is entitled to withhold payment on Taylors' invoices if they do not comply with the procedural or formal requirements in the Catering Contract for submission of invoices, specifically Section 10.1 of the same. However, in my view, Section 10.1 is a procedural provision, which, while indicating the type of evidence which Taylors should ordinarily produce in order to substantiate its claims for payments under the Catering Contract, does not preclude the possibility of such claims being otherwise substantiated, or simply demonstrated on a preponderance of the evidence. I therefore hold that the failure of Taylors to comply with Section 10.1 does not, of itself, preclude it from recovering in respect of invoices rendered.

28.    I have therefore found that Taylors is entitled to recover a total of $1,823,397.37 in respect of its invoices (paragraph 22, above), from which must be deducted the amounts of $210,767.26 (paragraph 23, above) and $695,989.57 (paragraph 24, above). Taylors' net recovery in respect of its invoices is therefore $916,640.54.

H. TAYLORS' CONVERSION CLAIM

29.    Taylors claims that Esso Chad converted certain food supplies and other assets which were present at the camp site at the time of termination of the Catering Contract,

by appropriating them and/or by transferring them to Senev-SSI, the entity that succeeded Taylors in performing the catering and camp services at the Kome Camp.

30.     Conversion is the "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights". *State v. Seventh Regiment Fund, Inc.*, (2002) 98 N.Y. 2d 249, 259 (Ct. Apps.).  A demand by the rightful owner, and refusal by the tortfeasor, are generally required as elements of the tort. *Ibid.* at p. 260.

31.     Esso Chad denies the conversion claim, and also alleges that Taylors is equitably estopped from asserting this claim, in that Taylors acquiesced in Senev-SSI's use of the assets (Tr. pp. 472-473, 506-507; Exx. R98, R102 and R103 (e-mails from Mr. Murphy to Mr. Deer dated January 22, 2004, and from Mr. Murphy to Mr. Jenkins dated January 30, 2004, and e-mail from Mr. Melvin to Esso Chad attaching letter from Mr. Breme to Mr. Ali dated January 30, 2004)).  It also alleges that, a demand by the claimant being a necessary element of a claim for conversion, Taylors made no such demand.

32.     In my view, the evidence set out in the foregoing paragraph of this Award demonstrates that Taylors was at all relevant times aware of the transfer of the assets to Senev-SSI, and thereby authorized the same.  Further, there is no evidence of a demand by Taylors and refusal by Esso Chad.  Therefore, two of the elements of the tort of conversion (unauthorized assumption and exercise of rights of ownership, and demand and refusal) are lacking.  Alternatively, by virtue of the facts and matters shown by the evidence set out in the foregoing paragraph of this Award, Taylors is equitably estopped from asserting its conversion claim.  I therefore reject Taylors' conversion claim.

## I.   TAYLORS' CLAIM FOR BREACH OF THE OBLIGATION OF GOOD FAITH AND FAIR DEALING

33.     Taylors claims that Esso Chad breached the implied obligation of good faith and fair dealing.  Initially, Taylors' claim was based on allegations that Esso Chad aided and abetted certain alleged breaches of fiduciary duty by Mr. Melvin (Request for Arbitration, paras. 61-66).  In addition, in its Post-Hearing Memorial, paragraphs 152-156, Taylors adds further allegations of breach of this implied obligation, namely that Esso Chad deliberately arranged unfairly and unlawfully to deprive Taylors

(i) of the benefit of the Catering Contract, including the assets and property acquired by Taylors pursuant thereto, and Taylors' business records required by them to submit timely and adequately supported invoices to Esso Chad;

(ii) of its ability to utilize the value of its assets in Chad as an additional resource from which to discharge its suppliers' claims;

(iii) of its negotiating power as contractor on site who could offer Senev-SSI a much needed "turn-key" operation.

34.     As evidence that Mr. Melvin was acting contrary to Taylors' interests, Taylors points to the increased cost of food during the months immediately preceding the termination of the Catering Contract, which would appear to suggest that he was stockpiling food.  Mr. Melvin's explanation of this increase in cost can be summarized as follows: (i) international suppliers refused to supply goods to Taylors, due to Taylors' inability to pay them, and therefore it became necessary to acquire goods in the local market, at a substantially higher price; (ii) local suppliers increased their prices in order to compensate for Taylors' delays in payment; (iii) additional food stock was required for the purpose of two other service contracts undertaken by Taylors in Chad, with Helmerich & Payne, Inc. and with Encana Corporation (Melvin St. paras. 53-56). Taylors also alleges that Mr. Melvin conspired with Senev-SSI to deprive Taylors of the Catering Contract.

35.     As late as the evidentiary hearing, Taylors' chief witnesses were unable to specify what acts on the part of Esso Chad constituted aiding and abetting Mr. Melvin's alleged breach of fiduciary duty: Tr. pp. 235, 437-8.  Indeed, there is no evidence that Esso Chad had knowledge of any breach of fiduciary duty on the part of Mr. Melvin, still less that Esso Chad aided and abetted any such breach.  The closest Taylors came to showing any such knowledge on the part of Esso Chad was in the cross-examination of Mr. Deer (Tr. pp. 648-650).  But that evidence merely demonstrates that Mr. Deer was aware of certain negotiations between Taylors and Senev-SSI; it certainly does not demonstrate any awareness of any potential breach of fiduciary duty by Mr. Melvin.  I therefore find that, if there was any breach of fiduciary duty on the part of Mr. Melvin, Esso Chad had no knowledge of it and did not aid and abet it.  I reject Taylors' claim under this head.  This renders it unnecessary for me to find whether Mr. Melvin was in fact in breach of any fiduciary duty towards Taylors, and I make no finding one way or the other on this issue.

36.     With respect to the additional allegations in paragraphs 152-156 of Taylors' Post-Hearing Memorial, I find that Taylors has failed to prove its case on the facts.  Indeed, I find that Taylors' alleged difficulties, as set out in sub-paragraphs (i), (ii) and (iii) of paragraph 33 above, were largely of their own making, and that Esso Chad acted reasonably in the circumstances.  The termination of Taylors was precipitated by Taylors' own statement to Esso Chad, in Mr. Goodman's letter dated December 17, 2003, that it (Taylors) was "in danger of becoming insolvent" unless it was compensated for its losses under the Catering Contract, and its request (if Esso Chad was unable or unwilling to pay $1.85 million to Taylors) "to terminate the contract with immediate effect" (Ex. R79).  I therefore reject Taylors' claim based on these additional allegations.

    J.   ESSO CHAD'S CLAIM IN RESPECT OF TAYLORS' FAILURE TO PAY ITS SUPPLIERS

37.     Esso Chad's first claim is in respect of Taylors' alleged breach of the Catering Contract by failing to pay its suppliers.  Esso Chad alleges that this constitutes a breach of Section 10.4 of the Catering Contract.

38.     Taylors disputes Esso Chad's interpretation of Section 10.4, alleging that this provision establishes that it is Taylors, and not Esso Chad, that is responsible for paying the suppliers, but does not create a direct contractual obligation from Taylors to Esso Chad to make such payments.

39.     Taylors' witness, Mr. Ali, appears to have agreed in cross-examination with Esso Chad's interpretation of Section 10.4: Tr. pp. 164, 261.  However, the opinion of even a senior executive of one of the parties is not determinative as to the interpretation of a contract, which must be decided according to the principles established by New York law for interpretation of contracts.

40.     In my view, it is a necessary interpretation of Section 10.4(a) of the Catering Contract that Taylors owes a direct contractual obligation to Esso Chad to pay for the labor and materials employed or provided by Taylors in connection with the Work. The ordinary and natural interpretation of the words "Contractor shall be solely responsible for [payment of these items]" is that Taylors owes a direct obligation, enforceable by Esso Chad against Taylors as a matter of contract, to make these payments.  The words do not merely delineate the areas of responsibility as to who pays what; common sense, and the ordinary and natural meaning of the words, also dictate that Esso Chad shall have the power to enforce this responsibility.   Section 10.4(b) of the Catering Contract is not inconsistent with this interpretation: Esso Chad's ability to pay or discharge any proper lien or charge for Taylors' labor or equipment provides it with an additional resource in case of non-payment by Taylors, but in no way excludes the possibility of a direct remedy of Esso Chad against Taylors.  I therefore find that Section 10.4 creates an obligation of Taylors, directly enforceable by Esso Chad, to pay suppliers of labor and materials (which would include food and other camp supplies).  It is admitted by Taylors that certain suppliers have not been paid by it.  This constitutes a breach of Taylors' obligations under the Catering Contract, and I allow Esso Chad's claim in this respect.

41.     Esso Chad claims the following categories of damages for this breach:

(a)     the amount of the Chadian judgments, which Esso Chad has been obliged to pay;

(b)     overdraft charges resulting from the attachment of Esso Chad's bank accounts by the suppliers;

(c)     the amount of certain additional claims by third parties against Esso Chad;

(d)     attorneys' fees and costs incurred in defending the Chadian claims;

(e)     damages for loss of reputation.

I discuss these categories of damages individually in paragraphs 48-53, below.

42.     Taylors relies on Section 5.4 of the Catering Contract as a basis for excluding Esso Chad's alleged damages.  Taylors alleges that the damages sought by Esso Chad are

15

consequential damages and that these are excluded by Section 5.4. "Consequential damages", under New York law, are damages which "seek to compensate a plaintiff for additional losses (other than the promised performance) that are incurred as a result of the defendant's breach": *Schonfeld v. Hilliard*, 218 F. 3d 164, 176 (2d Cir. 2000). In my view, Esso Chad, in claiming damages for breach of Section 10.4(a) of the Catering Contract, is claiming compensation for Taylors' "promised performance" under Section 10.4, namely, payment of the suppliers. I therefore reject Taylors' argument that these damages are consequential damages and are thus excluded by Section 5.4. This applies to all the heads of damages claimed by Esso Chad, without prejudice to other possible grounds for excluding them, such as remoteness. I do not need, therefore, to rule with respect to Esso Chad's argument that the operation of Section 5.4 is negated by Taylors' gross negligence or willful misconduct (Esso Chad's Pre-Hearing Memorial, p. 87; Esso Chad's Post-Hearing Memorial, pp. 11-13, 47).

43.     Taylors also relies on Section 13.7 of the Catering Contract. Taylors alleges that the damages sought by Esso Chad are damages for, or on account of, or arising from the termination of the Catering Contract pursuant to Section 13.4 of the same. This is simply not the case. The damages in respect of Taylors' failure to pay the suppliers arise out of events that existed prior to the termination of the Catering Contract, and do not arise "for, or on account of, or arising from" the termination. I therefore reject Taylors' argument based on Section 13.7.

44.     Taylors also alleges that Esso Chad ought to have mitigated its damages by failing to take any or sufficient steps to apply the receivables due from Esso Chad to Taylors, for the purpose of paying off the suppliers and thereby avoiding or mitigating the Chadian court actions that ensued. Suffice it to say that I expressly find that, given the confused and indeterminate situation with which Esso Chad was confronted after the Catering Contract was terminated, Esso Chad acted reasonably and did not fail to mitigate its damages.

45.     Taylors also argues that Esso Chad's primary claim, in respect of the Chadian judgments which it has paid, should be disregarded because the Chadian court decisions are subject to appeal and there is a good chance that the appeals will succeed (Tr. p. 861). However, it is clear that the reality is that, even if an appeal is successful, it will be almost impossible to recover the amounts paid by Esso Chad, which have been distributed to the various suppliers, at least one of which is no longer in business (Tr. pp. 859, 860, 875). I therefore reject this argument of Taylors.

46.     Taylors also alleges that the Chadian judgments paid by Esso Chad are not a consequence of Esso Chad's failure to pay its suppliers, since they were wholly or partly grounded on Esso Chad's own alleged tort in either failing to pay the suppliers, or in providing misinformation as to the amount due to the suppliers. In my view, whatever the precise legal basis of the Chadian judgments, they were clearly a direct consequence of Taylors' failure to pay the suppliers (Tr. pp. 871-872), and I hold that the matters alleged by Taylors with respect to the basis of the Chadian judgments do not break the chain of

causation or render too remote the damages represented by the amount of the judgments paid by Esso Chad.

47.     In addition to claiming damages for breach of the Catering Contract, Esso Chad claims specific performance of the Catering Contract, by paying all outstanding bills, invoices and payments due to all of Taylors' subcontractors and suppliers (Counterclaim and Answer, para. 102(c); Terms of Reference, para. 4(x); Esso Chad's Post-Hearing Memorial, pp. 47-8).  I reject Esso Chad's claim for specific performance, since one of the preconditions for such a remedy, namely, that the plaintiff has no adequate remedy at law, is lacking, Esso Chad having an adequate remedy in the form of the award of damages herein.  *United States Fidelity and Guaranty Company v. J. United Electrical Contracting Corp.*, 62 F. Supp. 2d 915, 921 (E.D.N.Y. 1999).

48.     The first category of damages claimed by Esso Chad is the amount of the Chadian judgments which it has paid.  The figure claimed by Esso Chad is $2,973,426.00; the amounts which make up this total are summarized at the bottom of the second page of the Appendix to Esso Chad's Post-Hearing Memorial.  This includes an amount in respect of a garnishment against Esso Chad by Societe Generale Tchadienne de Banque (SGTB): Esso Chad's Post-Hearing Memorial, Ex. B; Esso Chad's Pre-Hearing Memrial, p. 67.  It is legitimate to include the amount of this garnishment, since payment of the same is, in effect, part of the payment made, or to be made, by Esso Chad to one of the suppliers, Ressourcium: Cousin St., paras. 43-44.  I therefore find the entire amount, of $2,973,426.00, to be recoverable by Esso Chad.

49.     The second category of damages claimed by Esso Chad is the amount of the overdraft charges which Esso Chad paid in consequence of the attachment orders against Esso Chad's bank accounts, which attachment orders arose out of the suppliers' claims. The figure claimed by Esso Chad is $198,962.00. I find that these overdraft charges were indeed a direct consequence of said attachment orders (Tr. pp. 1349-1354), and that this amount is properly recoverable by Esso Chad.

50.     The third category of damages claimed by Esso Chad is in respect of certain additional claims made recently by certain suppliers, namely Senev-Tchad and Etablissements Bolaou.[4]  The claim by Etablissements Bolaou is clearly invalid, since this supplier has executed a Release in favor of Esso Chad (Tr. pp. 1113-1114, 1493-1494; Gregory St. para. 19).  The claim by Senev-Tchad, evidenced by a letter dated August 23, 2005, from Mr. Bechir to Mr. Royal (Ex. R296), presents more difficulty. This is clearly a real claim and, based on the recent history of litigation by suppliers in Chad against Esso Chad in respect of Taylors' debts, may well be followed by litigation against Esso Chad by Senev-Tchad. On the other hand, the claim may well be inflated, since it is considerably in excess of the amount demanded by Senev-Tchad of Taylors immediately after the termination (Ex. R103); and, as of this date, Esso Chad has provided no evidence of having paid anything pursuant to this demand.  Based on this last factor, I hold that Esso Chad has failed to prove that it has suffered any damage in respect

---

[4] These additional claims originally included a claim by the Chadian Government for unpaid customs duties.  This claim has now been withdrawn by Esso Chad: Esso Chad's Post-Hearing Memorial, p. 20.

of the Senev-Tchad claim, and I reject its claim in damages in this respect.  However, I grant it hereafter a declaration in respect of any amount which it may be required to pay to Senev-Tchad pursuant to court order (paragraph 55 hereof).

51.      The fourth category of damages claimed by Esso Chad is for attorneys' fees expended by Esso Chad in defending itself against the claims by the Chadian suppliers. The amount claimed is $1,583,836.00.  The legal expenses incurred in defending an action which is the consequence of the defendant's breach of contract are recoverable as part of the damages for such breach.  *A.I. Trade Finance, Inc. v. Centro Internationale Handelsbank AG,* 926 F. Supp. 378, 386 (S.D.N.Y. 1996).  This head of damages is therefore, in principle, properly recoverable by Esso Chad. However, the only amount recoverable as damages (as opposed to as part of an award of costs in this arbitration: as to which, see below) is that amount incurred by Esso Chad to defend the supplier claims in Chad.  The only attorneys' fees and costs which Esso Chad has demonstrated to have been incurred for the purpose of defending against such claims, are those of Norton Rose (Mr. Cousin's firm), Manama Pierre, and Cabinet Ribard; for a list of the invoices rendered by these firms, see the second page of the Appendix to Esso Chad's Post-Hearing Memorial.  These invoices add up to $731,389.00, and I award this amount to Esso Chad by way of damages.

52.      Esso Chad also claims for other costs and expenses in the amount of $126,748.00. It appears from the statement of Mr. Perombelon (para. 33) that these expenses were incurred as a consequence of the situation with respect to Taylors' suppliers; see also Esso Chad's Pre-Hearing Memorial, p. 70.  I therefore award this amount to Esso Chad by way of damages.

53.      Esso Chad's final damages claim is for reputation damages.  I have no hesitation in rejecting this claim.  Such damages are recoverable, under New York law, only when the plaintiff alleges specific business opportunities lost as a result of the plaintiff's diminished reputation: *I.R.V. Merchandising Corp. v. Jay Ward Productions, Inc.,* 856 F. Supp. 168, 175 (S.D.N.Y. 1994).  Esso Chad's evidence in this respect is insufficient to allege or demonstrate specific business opportunities lost by it.

54.      Therefore, Esso Chad's damages under this head, as allowed by me, amount to $4,030,525.00 ($2,973,426.00 + $198,962.00 + $731,389.00 + $126,748.00).

### K.   ESSO CHAD'S INDEMNITY CLAIM

55.      Esso Chad also claims to be indemnified by Taylors pursuant to Section 5.1 of the Catering Contract.  However, payment of the suppliers' claims cannot be fitted within any of the categories of indemnity provided by Section 5.1.  For example, the claims do not relate to "personal injury", nor to "loss, damage or destruction" of equipment or property, nor to failure to pay taxes or duties or any of the items referred to in Sections 5.1(e) or 7.1.  Therefore, on the ordinary and natural meaning of its words, Section 5.1 does not entitle Esso Chad to be indemnified in respect of the supplier claims, and I reject Esso Chad's claim under this head. On the other hand, Section 6.1 of Exhibit A (which

18

relates to hiring etc. of local personnel) assists Esso Chad, in respect of the recent claim against Esso Chad by Senev-Tchad (Ex. R296, letter from Mr. Bechir to Mr. Royal dated August 23, 2005; paragraph 50, above). In so far as the claim by Senev-Tchad relates to labor, it falls squarely within the indemnity or "hold harmless" obligations of said Section 6.1. I will therefore grant to Esso Chad a declaration that Taylors is to indemnify it in respect of any sums which Esso Chad is obliged to pay to Senev-Tchad, pursuant to the order of a competent court, in respect of payments which Taylors is obliged to make under Section 6.1 of Exhibit A of the Catering Contract.

### L.   ESSO CHAD'S CLAIM FOR BREACH OF THE OBLIGATION OF GOOD FAITH AND FAIR DEALING

56.    Esso Chad claims that Taylors breached its obligation of good faith and fair dealing by failing to hedge against the currency risk; by intentionally undercapitalizing its Chadian operation; by failing to pursue additional capitalization; by improperly seeking to condition its performance upon receiving extra-contractual payments from Esso Chad; by seeking a retroactive rate increase; and by failing to disclose overdue suppliers in its reports to Esso Chad. In my view, even if Esso Chad's allegations are true, Esso Chad was not thereby deprived of the fruits, or the benefits, of the Catering Contract. *Don King Productions, Inc. v Douglas,* 742 F. Supp. 741, 767 (S.D.N.Y. 1990). Until the Catering Contract was terminated, Esso Chad received the benefits, that is, the services, to be provided thereunder by Taylors. Therefore, there was no breach by Taylors of its obligation of good faith and fair dealing, and I reject Esso Chad's claim under this head.

### M. SUMMARY OF MY AWARD

57.    The net result of my findings and determinations herein is that Taylors recovers the amount of $916,640.54, and Esso Chad recovers the amount of $4,030,525.00. I also hold that each party is entitled, in fact and in law, to set off the respective amount awarded to it, against the amount awarded to the other party. The net result is that Esso Chad is entitled to recover from Taylors the amount of $3,113,884.46 ($4,030,525.00 less $916,640.54). In addition, Esso Chad is entitled to a declaration as set out in paragraph 55 hereof.

### N. INTEREST, ATTORNEYS' FEES AND COSTS

58.    Pre-Award and post-Award interest is payable on the amount awarded, under New York law: N.Y. CPLR, Sections 5001, 5003 and 5004. The parties are agreed that the applicable rate is 9%: Taylors' Post-Hearing Memorial, p. 65; Esso Chad's Post-Hearing Memorial, p.p. 51-52. I award interest on the net amount of Esso Chad's successful claim for damages, $3,113,884.46, at the rate of 9% per annum, until payment, from January 1, 2005, this being an approximate midpoint of the various dates on which Esso Chad incurred the losses suffered by it.

59.    The decision with respect to attorneys' fees and costs is not easy. On the one hand, Esso Chad acted unreasonably in not accepting or recognizing certain invoices at

an earlier date, and Taylors was obliged to initiate this arbitration in order to recover the amount of its invoices.  On the other hand, Esso Chad was seriously prejudiced, financially and otherwise, in fact and in law, by the situation which Taylors left with respect to the suppliers, and is entitled to a substantial net recovery pursuant to this Award.  Exercising as fairly as I can my discretion pursuant to Article 31(3) of the Rules, and bearing in mind that the amount awarded to Esso Chad by way of damages is approximately four times the amount awarded to Taylors by way of damages, I determine that Taylors shall bear its own costs in this arbitration, and shall pay three-quarters of my fees and expenses and of the administrative expenses of the Court, as well as three-quarters of Esso Chad's reasonable legal costs.  The costs of the arbitration, being my fees and expenses and the administrative expenses of the Court, having been fixed by the Court at $130,000.00, Taylors shall pay to Esso Chad the amount of $32,500.00, so that Taylors bears three-quarters of my fees and expenses and of the administrative expenses of the Court.  It shall also pay to Esso Chad $590,588.31, being three-quarters of Esso Chad's attorneys' fees and costs of $787,451.10 (second page of the Appendix to Esso Chad's Post-Hearing Memorial).

60.     Esso Chad's prayers for relief are broad enough to include an award of interest on attorneys' fees and costs (see paragraph 16(ii)(h) and (i) of this Award).  In my view, it is appropriate to award such interest, in addition to interest on damages.  The appropriate rate of interest is 9%, consistent with paragraph 58 hereof.  I award interest on the attorneys' fees and costs, and the costs of this arbitration, payable by Taylors pursuant to paragraph 59 hereof, and which total $623,088.31 ($32,500.00 + $590,588.31).  Such interest shall be payable from May 1, 2006 on any amount of such attorneys' fees and costs unpaid as of that date, until payment. The date of May 1, 2006 is chosen in order to give Taylors a reasonable time in which to pay the amounts referred to in this paragraph.

O.  FINAL COMMENTS

61.     In the course of the arbitration proceedings, certain matters were discussed, sometimes extensively, which ultimately bore little relevance to the issues which I have to determine.  For example, there was considerable discussion of Taylors' performance of the Catering Contract generally, and of the justification or otherwise for Esso Chad's termination of the Catering Contract; but there is no claim for wrongful termination of the Catering Contract (Taylors' Post-Hearing Reply Memorial, p. 7), nor for any breach of the Catering Contract by Taylors other than in the specific respects referred to in paragraph 16(ii) of this Award.  Therefore I do not discuss these or other matters except to the extent relevant to the issues presented for my determination.

AWARD

Accordingly, I make the following AWARD:

(i)     Taylors shall pay to Esso Chad the amount of $3,113,884.46, together with interest at the rate of 9% per annum from January 1, 2005 until payment;

(ii)     Taylors shall indemnify Esso Chad in respect of any sums which Esso Chad is obliged to pay to Senev-Tchad, pursuant to the order of a competent court, in respect of payments which Taylors is obliged to make under Section 6.1 of Exhibit A of the Catering Contract;

(iii)    Taylors shall pay to Esso Chad the amount of $590,588.31 in respect of attorneys' fees and costs, together with interest at the rate of 9% per annum on any amount unpaid from May 1, 2006, until payment;

(iv)    Taylors shall pay to Esso Chad the amount of $32,500.00 in respect of my fees and expenses, and the Court's administrative expenses, together with interest at the rate of 9% per annum on any amount unpaid from May 1, 2006, until payment;

(v)     Save as aforesaid, the parties' claims and counterclaims are denied.

Place of arbitration:
New York, New York
United States of America

March 23, 2006


Carlos J. Bianchi
Sole Arbitrator

21